**Nos.: 26-1768 & 26-1769**

# United States Court of Appeals
### *for the*
# Third Circuit

———— • ————

SPECIALTYCARE, INC., *ET AL.*,

*Plaintiffs – Appellants*

v.

CIGNA HEALTHCARE, INC.,

*Defendant – Appellee*

SPECIALTYCARE, INC., *ET AL.*,

*Plaintiffs – Appellants*

v.

UMR, INC.,

*Defendant – Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF DELAWARE
IN CASE NOS. 1:24-CV-01378 & 1:24-CV-01396

**BRIEF OF PLAINTIFFS – APPELLANTS
SPECIALTYCARE, INC., *ET AL.***

Joshua D. Arters
POLSINELLI PC
501 Commerce St., Suite 1300
Nashville, Tennessee 37203
Tel. (615) 252-3923
jarters@polsinelli.com

Kevin T. Elkins
POLSINELLI PC
501 Commerce St., Suite 1300
Nashville, Tennessee 37203
Tel. (615) 949-5919
kelkins@polsinelli.com

*Attorneys for Plaintiffs-Appellants*

# CORPORATE DISCLOSURE STATEMENT

1.      Appellant SpecialtyCare, Inc. hereby certifies that it is a privately held corporation. SpecialtyCare Inc.'s parent corporations are: SpecialtyCare Holdings, LLC, SCSG EA Acquisition Company, Inc., KSPC Intermediate Holdings, Inc., KSPC Holdings, Inc., and Cumberland Top, Holdings, Inc. and no publicly held corporation or other publicly held entity owns 10% or more of SpecialtyCare Inc.'s stock.

2.      Appellant Sentient Physicians, PC, hereby certifies that it is a privately held professional corporation, has no parent corporation, and no publicly held corporation or other publicly held entity owns 10% or more of Sentient Physicians, PC's stock.

3.      Appellant Remote Neuromonitoring Physicians, PC, hereby certifies that it is a privately held corporation, has no parent corporation, and no publicly held corporation or other publicly held entity owns 10% or more of Remote Neuromonitoring Physicians, PC's stock.

Dated: June 15, 2026

*/s/ Joshua D. Arters*
Joshua D. Arters
***Counsel of Record for Plaintiffs-Appellants***

i

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ..................................................1

STATEMENT OF JURISDICTION..................................................................2

    I.     No. 26-1768 (D. Del. No. 1:24-cv-01378)..........................................2

    II.    No. 26-1769 (D. Del. No. 1:24-cv-01396).........................................2

    III.   CONSOLIDATION ................................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................4

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................6

STATEMENT OF THE CASE.........................................................................8

    I.     STATEMENT OF FACTS.........................................................8

    II.    THE PROCEEDINGS BELOW .................................................12

SUMMARY OF ARGUMENT .....................................................................15

STANDARD OF REVIEW ..........................................................................19

    I.     COUNTS I THROUGH IV.......................................................19

    II.    COUNTS V THROUGH VII......................................................20

ARGUMENT ............................................................................................21

    I.    The NSA Authorizes a Narrow Action to Enforce Unpaid, Final, Binding IDR Awards. ...........................................................21

        a.    The NSA's Text Creates a Binding, Money-Mandating Payment Right.......................................................22

        b.    The District Court Recognized SpecialtyCare's Personal Right to Payment but Erred by Denying Any Remedy. ..........27

c. The NSA's Administrative Provisions Do Not Enforce IDR Awards and Do Not Displace Judicial Enforcement. .......31

d. A Bar on Judicial Review Is Not a Bar on Judicial Enforcement. ...................................................................35

e. The Better-Reasoned Authorities Give Effect to the NSA's Text and Structure. ..........................................38

II. The District Court Also Erred in Dismissing SpecialtyCare's FAA Confirmation Claim...............................................43

a. The NSA's IDR Process Produces Binding Awards That Function Like Arbitral Awards. ..............................44

b. FAA § 10 Limits Vacatur Review, but It Does Not Make Unpaid IDR Awards Unenforceable. ...........................46

c. Congress's Failure to Cross-Reference FAA § 9 Does Not Turn Binding Awards Into Optional Payments. ...............48

III. SpecialtyCare Has Article III Standing and States an ERISA § 502(a)(1)(B) Claim................................................50

a. The Injury Is the Denial of Plan Benefits, Not Exposure to a Balance Bill. .........................................51

b. SpecialtyCare May Assert a Denial of Benefits Claim as Assignee. ...............................................54

c. The NSA's ERISA Amendments Supply Enforceable Plan Terms. ..............................................55

IV. The Delaware Claims Should Be Reinstated If Any Federal Claim Is Reinstated. .......................................58

CONCLUSION..............................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004).....................................................................................51

*Agag v. Cigna Health & Life Ins. Co.*,
No. 3:25-cv-00498-SRU, 2026 WL 1021213 (D. Conn. Apr. 15,
2026) ...........................................................................................................*passim*

*Alexander v. Sandoval*,
532 U.S. 275 (2001).................................................................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................19

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) ........................................................................52

*Bauer v. Summit Bancorp*,
325 F.3d 155 (3d Cir. 2003) ........................................................................56

*Cent. Laborers' Pension Fund v. Heinz*
541 U.S. 739 (2004).....................................................................................56

*Cheminova A/S v. Griffin LLC*,
182 F. Supp. 2d 68, 70-73 (D.D.C. 2002) .................................................45

*Constitution Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ........................................................................19

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ......................................................................52

*Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*,
No. 24-cv-20428-GAYLES, 2025 WL 742761 (S.D. Fla. Mar. 9,
2025) ............................................................................................................42

iv

*East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*,
No. 25 Civ. 255 (PAE), 2025 WL 2371537 (S.D.N.Y. Aug. 14, 2025), *appeal docketed,* No. 25-2204 (2d Cir. Sept. 12, 2025). ..................6, 41

*Elkadrawy v. Vanguard Grp.*,
584 F.3d 169 (3d Cir. 2009) ...............................................................20

*FCC v. AT&T Inc.*,
No. 25-406, slip op. (U.S. June 4, 2026) ............................................24

*Fenico v. City of Philadelphia*,
70 F.4th 151 (3d Cir. 2023) ...............................................................19

*Fields v. City of Pittsburgh*,
714 F. App'x 137 (3d Cir. 2017) ........................................................20

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) ...............................................................45

*Guardian Flight, L.L.C. v. Health Care Service Corp.*,
140 F.4th 271 (5th Cir. 2025), *cert. denied*, No. 25-441 (U.S. Jan. 12, 2026) ...........................................................................*passim*

*Guardian Flight LLC v. Aetna Life Ins. Co.*,
789 F. Supp. 3d 214 (D. Conn. 2025)...............................................*passim*

*Hall St. Assocs., LLC v. Mattel, Inc.*,
552 U.S. 576 (2008).............................................................................46

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017) ...............................................................19

*Key Tronic Corp. v. United States*,
511 U.S. 809 (1994)............................................................................24

*Knudsen v. MetLife Grp., Inc.*,
117 F.4th 570 (3d Cir. 2024) .............................................................53

*Lester H. v. Gilhool*,
916 F.2d 865 (3d Cir. 1990) ...............................................................29

v

*Maine Cmty. Health Options v. United States*,
  590 U.S. 296 (2020) ...................................................................24, 25

*McGovern v. City of Philadelphia*,
  554 F.3d 114 (3d Cir. 2009) ...............................................*passim*

*Med-Trans Corp. v. Cap. Health Plan, Inc.*,
  700 F. Supp. 3d 1076 (M.D. Fla. 2023)..............................................42

*Mitchell v. Blue Cross Blue Shield of N.D.*,
  953 F.3d 529 (8th Cir. 2020) .............................................................52

*Modern Orthopaedics of NJ v. Premera Blue Cross*,
  No. 2:25-cv-01087 (BRM) (JSA), 2025 WL 3063648 (D.N.J. Nov.
  3, 2025) .................................................................................................41

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
  801 F.3d 369 (3d Cir. 2015) .........................................................50, 55

*North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
  781 F.3d 182 (5th Cir. 2015) .............................................................52

*N.R. ex rel. S.R. v. Raytheon Co*,
  24 F.4th 740, 752 (1st Cir. 2022).......................................................57

*Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna
  Health & Life Ins. Co.*,
  No. CV 20-10345 (KM) (ESK), 2022 WL 1567797 (D.N.J. May
  18, 2022) ..............................................................................................57

*PHI Health, LLC v. Optimum Choice, Inc.*
  No. 25-cv-02320-ABA, 2026 WL 850453, at *10–11 (D. Md. Mar.
  27, 2026) ....................................................................................*passim*

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ...............................................................19

*Pinker v. Roche Holdings, Ltd.*,
  292 F.3d 361 (3d Cir. 2002) ...............................................................19

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*,
  397 F.3d 56 (1st Cir. 2005)..................................................................25

*SpecialtyCare, Inc. v. CareFirst of Maryland, Inc.*,
   No. 1:25-cv-00130-ABA, 2026 WL 1656946 (D. Md. June 9,
   2026) ..................................................................................30, 39, 40

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008)....................................................................53, 55

*Teamsters Loc. 177 v. United Parcel Serv.*,
   966 F.3d 245 (3d Cir. 2020) .......................................................37, 45

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020)...........................................................................53

*Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of City of
   Pittsburgh*,
   382 F.3d 412 (3d Cir. 2004) .......................................................23, 27

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)....................................................................52, 53

*W. Penn Allegheny Health Sys. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010) ...............................................................19

*Wisniewski v. Rodale, Inc.*,
   510 F.3d 294 (3d Cir. 2007) ..............................................................28

**Statutes**

5 U.S.C. § 8902(p) ................................................................................9

9 U.S.C. §§ 1–16................................................................................*passim*

9 U.S.C. § 9 .......................................................................................*passim*

9 U.S.C. § 10 .....................................................................................*passim*

26 U.S.C. §§ 4980D, 9816, 9834.........................................................32

26 U.S.C. § 9817 ...................................................................................9

28 U.S.C. § 1291 ...................................................................................2

28 U.S.C. §§ 1331 and 1367(a)............................................................2

28 U.S.C. § 1367(c)(3) ........................................................................................59

29 U.S.C. § 1104(a)(1)(D) ..................................................................................56

29 U.S.C. § 1132(a)(1)(B) ......................................................................18, 50, 51

29 U.S.C. § 1132(a)(5) ........................................................................................32

29 U.S.C. § 1185e(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6) ...............56, 57

29 U.S.C. § 1185e(a)(1)(C)(iv), (b)(1)(D), (c)(1), (c)(6) .......................................51

29 U.S.C. § 1185e(a)(1)(C)(iv), (b)(1)(D), (c)(5)(A), (c)(5)(E)(i),
    (c)(6) ..............................................................................................................57

29 U.S.C. § 1185e(a)-(c) .....................................................................................51

29 U.S.C. § 1185e(c)(5)(E)(i)(I), (c)(6) ...............................................................56

42 U.S.C. §§ 201 et. sea. ...........................................................................9, 32, 34

42 U.S.C. § 300gg-22(a), (b)(2)(A) ....................................................................32

42 U.S.C. § 300gg-22(b)(2)(A) ...........................................................................41

42 U.S.C. § 300gg-111 ...............................................................................*passim*

42 U.S.C. § 2799A-2 (42 U.S.C. § 300gg-112) .....................................................8

42 U.S.C. §§ 300gg-131 to -134 .........................................................................34

ERISA § 502(a)(1)(B) ................................................................................*passim*

ERISA § 716 (29 U.S.C. § 1185e) .................................................................8, 57

ERISA § 717 (29 U.S.C. § 1185f) .........................................................................8

Internal Revenue Code § 9816 (26 U.S.C. § 9816) ...............................................8

No Surprises Act, Pub. L. No. 116-260, div. BB, tit. I, §§ 102–105,
    134 Stat. 1182, 2757 (2020).............................................................................9

**Other Authorities**

45 C.F.R. § 149.510(c)(4)(ix) .................................................................25, 26, 34

86 Fed. Reg. 36,872 (July 13, 2021) Part I .................................................................9

86 Fed. Reg. 55,980 (Oct. 7, 2021) Part II ...............................................................9

Fed. R. App. P. 4(a)(1)(A) .........................................................................................2

Fed. R. Civ. P. 12(b)(6)............................................................................................19

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. These consolidated appeals present unsettled and recurring questions of federal law concerning the enforceability of binding independent dispute resolution ("IDR") awards under the No Surprises Act ("NSA"), the relationship between judicial review and judicial enforcement, and the availability of relief under the Employee Retirement Income Security Act of 1974 ("ERISA") when plan benefits are unpaid but patients are protected from balance bills. No precedential decision of this Court directly resolves those questions, and district courts have divided over them.

Oral argument would materially assist the Court in addressing the statutory structure Congress created. The district court recognized that the NSA makes IDR awards binding and requires payment within 30 days, yet held that Plaintiffs-Appellants have no federal remedy to enforce unpaid awards. These consolidated appeals therefore turn on the interaction among the NSA's payment command, its limited judicial-review provision, the statute's administrative-enforcement provisions, and ERISA § 502(a)(1)(B). Those issues are purely legal, important to the operation of the federal IDR system, and well suited for focused questioning by the Court.

## STATEMENT OF JURISDICTION

**I.    No. 26-1768 (D. Del. No. 1:24-cv-01378).**

Plaintiffs-Appellants, SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively "SpecialtyCare"), sued Defendant-Appellee, Cigna Healthcare, Inc. ("Cigna"), under federal law and Delaware law. The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). A-041 (*SpecialtyCare, et al. v. Cigna*, D. Del. No. 1:24-cv-01378, Docket Item (the "Cigna D.I.") 1 at ¶ 10). The district court entered judgment for Cigna on March 26, 2026. A-003–004 (Cigna D.I. 29, pp. 1–2). SpecialtyCare timely appealed on April 3, 2026. A-001–002 (Cigna D.I. 30); Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291.

**II.    No. 26-1769 (D. Del. No. 1:24-cv-01396).**

Plaintiffs-Appellants, SpecialtyCare, sued Defendant-Appellee, UMR, Inc. ("UMR"), under federal law and Delaware law. The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). A-340–341 (*SpecialtyCare, et al. v. UMR*, D. Del. No. 1:24-cv-01396, Docket Item (the "UMR D.I.") 1 at ¶ 10). The district court entered judgment for UMR on March 26, 2026. A-022–023 (UMR D.I. 27, pp. 1–2). SpecialtyCare timely appealed on April 3, 2026. A-020–021 (UMR D.I. 28); Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291.

### III.   CONSOLIDATION

On April 15, 2026, this Court ordered SpecialtyCare to "file a single opening (and reply) brief addressing both of their appeals." *See* Order, No. 26-1768 and No. 26-1769, ECF No. 4. SpecialtyCare therefore files one opening brief addressing its appeals in both cases. This brief refers to Cigna and UMR together as "Appellees" or "Insurers."

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.     The NSA requires plans and issuers to pay out-of-network providers directly, makes IDR awards "binding upon the parties involved," and commands that the required payment "shall be made" within 30 days. Did the district court err by holding that those commands create a personal right to payment but no judicial remedy to enforce unpaid IDR awards?

Raised at A-046–047 (Cigna D.I. 1 ¶¶ 38–47); A-345-346 (UMR D.I. 1 ¶¶ 38–47); A-316–321 (Cigna D.I. 27, pp. 3–8); A-497–502 (UMR D.I. 25, pp. 3–8). Ruled upon at A-012–015 (Cigna D.I. 26, pp. 8–11); A-031–034 (UMR D.I. 24, pp. 8–11); A-003–004 (Cigna D.I. 29, pp. 1–2); A-022–023 (UMR D.I. 27, pp. 1–2).

2.     The NSA limits judicial review of IDR awards to the narrow vacatur grounds identified in Federal Arbitration Act ("FAA") § 10. Did the district court err by treating that limitation on merits review as a bar on judicial enforcement or confirmation of unpaid binding IDR awards?

Raised at A-045-046 (Cigna D.I. 1 ¶¶ 33–37); A-344–345 (UMR D.I. 1 ¶¶ 33–37); A-314–315 (Cigna D.I. 27, pp. 1–3); A-495–496 (UMR D.I. 25, pp. 1–3). Ruled upon at A-008–011 (Cigna D.I. 26, pp. 4–7); A-027–030 (UMR D.I. 24, pp. 4–7); A-003–004 (Cigna D.I. 29, pp. 1–2); A-022–023 (UMR D.I. 27, pp. 1–2).

3.     ERISA permits an assignee-provider to recover benefits due under an ERISA plan. Did the district court err by holding that the nonpayment of plan

benefits causes no concrete injury so long as the patient is protected from a balance bill?

Raised at A-047–048 (Cigna D.I. 1 ¶¶ 49–56); A-346–347 (UMR D.I. 1 ¶¶ 49–56); A-321–323 (Cigna D.I. 27, pp. 8–10); A-502–504 (UMR D.I. 25, pp. 8–10). Ruled upon at A-015–017 (Cigna D.I. 26, pp. 11–13); A-034–036 (UMR D.I. 24, pp. 11–13); A-003–004 (Cigna D.I. 29, pp. 1–2); A-022–023 (UMR D.I. 27, pp. 1–2).

4.    If any federal claim is reinstated, should the dismissal of SpecialtyCare's Delaware claims be vacated and remanded because the district court declined supplemental jurisdiction only after dismissing every federal claim?

Raised at A-048–050 (Cigna D.I. 1 ¶¶ 57–77); A-347–349 (UMR D.I. 1 ¶¶ 57–77); A-323 (Cigna D.I. 27, p. 10); A-504 (UMR D.I. 25, p. 10). Ruled upon at A-017–018 (Cigna D.I. 26, pp. 13–14); A-036–037 (UMR D.I. 24, pp. 13–14); A-003–004 (Cigna D.I. 29, pp. 1–2); A-022–023 (UMR D.I. 27, pp. 1–2).

The answer to each question is yes.

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

These consolidated appeals, *SpecialtyCare, Inc. v. Cigna Healthcare, Inc.*, No. 26-1768, and *SpecialtyCare, Inc. v. UMR, Inc.*, No. 26-1769, have not yet been before this Court.

There are two related appeals pending before this Court: *SpecialtyCare, Inc. v. Aetna Inc.*, No. 26-1114, and *SpecialtyCare, Inc. v. Meritain Health Inc.*, No. 26-1864. Those appeals, like these consolidated appeals, arise from actions brought by SpecialtyCare to enforce NSA IDR awards. SpecialtyCare is represented by different counsel in those appeals. On June 12, 2026, SpecialtyCare also filed notices of appeal to the United States Circuit Court of Appeals for the Seventh Circuit in the following district court actions:

- *SpecialtyCare et al., v. Health Care Service Corporation d/b/a Blue Cross Blue Shield of New Mexico*, No. 1:24-cv-12902 (N.D. Ill.)
- *SpecialtyCare et al., v. Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois*, No. 1:24-cv-12935 (N.D. Ill.)
- *SpecialtyCare et al., v. Health Care Service Corporation d/b/a Blue Cross Blue Shield of Texas*, No. 1:24-cv-12945 (N.D. Ill.)

To counsel's knowledge, there is at least one other case presenting similar questions of law pending in the Second Circuit. *See East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25 Civ. 255 (PAE), 2025 WL 2371537 (S.D.N.Y. Aug. 14, 2025), *appeal docketed,* No. 25-2204 (2d Cir. Sept. 12, 2025).  Counsel is also generally aware of numerous other currently pending federal and state court cases involving similar

6

legal issues concerning enforcement of NSA IDR awards, but those cases do not involve the judgments or IDR awards at issue in these consolidated appeals.

## STATEMENT OF THE CASE

### I.    STATEMENT OF FACTS

SpecialtyCare provides perfusion and intraoperative neuromonitoring health care services. A-039 (Cigna D.I. 1 ¶ 3); A-338 (UMR D.I. 1 ¶ 3). Cigna and UMR insure or administer health plans, including self-funded ERISA plans. A-039, 041, 047 (Cigna D.I. 1 ¶¶ 3, 9, 49); A-338, 340, 346 (UMR D.I. 1 ¶¶ 3, 9, 49). SpecialtyCare provided, and continues to provide, out-of-network health care services to Cigna's and UMR's members and insureds. A-042, 044 (Cigna D.I. 1 ¶¶ 13, 29); A-341, 344 (UMR D.I. 1 ¶¶ 13, 29).

SpecialtyCare is out-of-network with Cigna and UMR. A-039, 042 (Cigna D.I. 1 ¶¶ 3, 14); A-338, 341 (UMR D.I. 1 ¶¶ 3, 14). The parties therefore have no network contract setting reimbursement rates for SpecialtyCare's services. *Id.* But Cigna and UMR, or the plans they insure or administer, still must cover and pay for certain out-of-network items and services furnished to their members and insureds. A-042 (Cigna D.I. 1 ¶ 14); A-341 (UMR D.I. 1 ¶ 14); 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D).[1] The patients or plan participants assigned their

---

[1] The NSA amended several regimes through parallel provisions. For emergency and certain nonemergency services furnished by nonparticipating providers, and for the federal IDR process, the NSA added Public Health Service ("PHS") Act § 2799A-1 (42 U.S.C. § 300gg-111), ERISA § 716 (29 U.S.C. § 1185e), and Internal Revenue Code ("Code") § 9816 (26 U.S.C. § 9816). For air ambulance services, it added PHS Act § 2799A-2 (42 U.S.C. § 300gg-112), ERISA § 717 (29 U.S.C. § 1185f), and

benefit claims and payment rights to SpecialtyCare in writing. A-042 (Cigna D.I. 1 ¶ 14); A-341 (UMR D.I. 1 ¶ 14). For self-funded ERISA plans Cigna and UMR administer, SpecialtyCare therefore stands in the shoes of the assigning plan participants and beneficiaries. A-047 (Cigna D.I. 1 ¶ 49); A-346 (UMR D.I. 1 ¶ 49).

The NSA protects patients by removing them from covered out-of-network payment disputes. For covered emergency services and certain covered nonemergency services, the patient's cost sharing is limited to the in-network amount. 42 U.S.C. § 300gg-111(a)(1)(C)(ii)–(iii), (b)(1)(A)–(B). The plan or issuer must then make the required payment directly to the out-of-network provider. *Id.* § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D).

The statute also supplies the process for determining how much must be paid. The plan or issuer must make an initial payment or issue a notice of denial within 30 calendar days after receiving the provider's bill. *Id.* § 300gg-111(a)(1)(C)(iv)(I), (b)(1)(C). If the provider disputes the amount, either side may initiate open

---

Code § 9817 (26 U.S.C. § 9817), and it amended the Federal Employees Health Benefits Act, 5 U.S.C. § 8902(p). *See* No Surprises Act, Pub. L. No. 116-260, div. BB, tit. I, §§ 102–105, 134 Stat. 1182, 2757 (2020). This brief cites the PHS Act provisions unless context requires otherwise, and refers to the Departments of Health and Human Services, Labor, and the Treasury collectively as "the Departments." *See* Requirements Related to Surprise Billing, Part I, 86 Fed. Reg. 36,872 (July 13, 2021); Requirements Related to Surprise Billing, Part II, 86 Fed. Reg. 55,980 (Oct. 7, 2021).

negotiations. *Id.* § 300gg-111(c)(1)(A). If negotiations do not resolve the dispute, either side may initiate IDR. *Id.* § 300gg-111(c)(1)(B).

IDR is a final-offer process or so-called "baseball-style" arbitration. Each side submits a payment offer and supporting information to a certified IDR entity, which is a private third-party neutral. *Id.* § 300gg-111(c)(5)(A)–(B). The IDR entity selects one offer after considering the statutory factors. *Id.* § 300gg-111(c)(5)(A)–(C). That selection determines the out-of-network rate to be paid. *Id.* § 300gg-111(a)(3)(K)(ii)(II). The NSA gives the award binding effect. It provides that the award "shall be binding upon the parties involved," absent fraud or misrepresentation. *Id.* § 300gg-111(c)(5)(E)(i)(I). It also provides that the required payment "shall be made" within 30 days after the award. *Id.* § 300gg-111(c)(6).

SpecialtyCare alleged that Cigna's and UMR's initial payments were too low. A-040–041 (Cigna D.I. 1 ¶ 6); A-339–340 (UMR D.I. 1 ¶ 6). As a result, SpecialtyCare invoked IDR, and certified IDR entities issued awards requiring additional payment. A-040–041, 043 (Cigna D.I. 1 ¶¶ 6, 20); A-339–340, 342 (UMR D.I. 1 ¶¶ 6, 20). Cigna and UMR did not pay those awards. A-043–045 (Cigna D.I. 1 ¶¶ 22–27, 32); A-343–344 (UMR D.I. 1 ¶¶ 22–27, 32).

The complaint against Cigna identified 789 unpaid IDR awards totaling $1,360,403. A-039 (Cigna D.I. 1 ¶ 2); A-052–071 (Cigna D.I. 1-1). The complaint against UMR identified 300 unpaid IDR awards totaling $256,427. A-338 (UMR

10

D.I. 1 ¶ 2); A-351–359 (UMR D.I. 1-1). SpecialtyCare further alleged that Cigna and UMR failed to devote the claims-payment systems and personnel necessary to comply with their NSA obligations. A-045 (Cigna D.I. 1 ¶ 30); A-344 (UMR D.I. 1 ¶ 30). That delay benefited the Insurers because the unpaid award amounts remained in their possession, generating interest or investment income, or lowering the apparent claims costs of the plans they administer. A-045 (Cigna D.I. 1 ¶ 31); A-344 (UMR D.I. 1 ¶ 31).

SpecialtyCare sued Cigna and UMR to enforce the unpaid IDR awards. Both complaints asserted claims under the NSA, the FAA, ERISA, and Delaware law. Count I sought confirmation of the IDR awards under FAA § 9. A-045–046 (Cigna D.I. 1 ¶¶ 33–37); A-344–345 (UMR D.I. 1 ¶¶ 33–37). Count II alleged violations of 42 U.S.C. § 300gg-111(c)(6), which requires payment of IDR awards within 30 days. A-046 (Cigna D.I. 1 ¶¶ 38–42); A-345 (UMR D.I. 1 ¶¶ 38–42). Count III alleged an implied NSA right of action to enforce the IDR awards. A-046–047 (Cigna D.I. 1 ¶¶ 43–47); A-345–346 (UMR D.I. 1 ¶¶ 43–47). Count IV alleged an ERISA claim for failure to pay benefits due under ERISA-governed plans. A-047–048 (Cigna D.I. 1 ¶¶ 48–56); A-346–347 (UMR D.I. 1 ¶¶ 48–56). Counts V through VII alleged Delaware claims for open account, bad faith, and unjust enrichment. A-048–050 (Cigna D.I. 1 ¶¶ 57–77); A-347–349 (UMR D.I. 1 ¶¶ 57–77).

11

## II.    THE PROCEEDINGS BELOW

Cigna and UMR moved to dismiss all claims. A-072–073, 075–105 (Cigna D.I. 15, 16); A-360, 362–386 (UMR D.I. 16, 17). The magistrate judge recommended granting both motions in separate Reports and Recommendations. A-005–019 (Cigna D.I. 26); A-024–038 (UMR D.I. 24). SpecialtyCare timely objected to the Reports and Recommendations. A-310–324 (Cigna D.I. 27); A-491–505 (UMR D.I. 25). The district court reviewed the Reports and Recommendations *de novo*, overruled SpecialtyCare's objections, adopted both Reports and Recommendations dismissing SpecialtyCare's claims, and entered judgment for Cigna and UMR. A-003–004 (Cigna D.I. 29, pp. 1–2); A-022–023 (UMR D.I. 27, pp. 1–2).

The district court's orders granting the Insurers' motions to dismiss adopted the Reports and Recommendations, accepting the statutory premise that an IDR award is final and binding and that payment must be made within 30 days, yet left SpecialtyCare with no way to enforce the IDR awards. A-006 (Cigna D.I. 26, p. 2); A-025 (UMR D.I. 24, p. 2). The district court's orders thereby left SpecialtyCare with no mechanism to recover the unpaid IDR awards totaling more than $1.6 million across the two cases. A-006–007 (Cigna D.I. 26, pp. 2–3); A-025–026 (UMR D.I. 24, pp. 2–3).

The court nevertheless dismissed all federal claims. On Count I, the court held that FAA § 9 does not provide a vehicle to confirm the IDR awards. A-008–011 (Cigna D.I. 26, pp. 4–7); A-027–030 (UMR D.I. 24, pp. 4–7). The court reasoned that Congress incorporated FAA § 10 into the NSA but did not incorporate FAA § 9. *Id.* The court also rejected SpecialtyCare's distinction between judicial review and judicial enforcement, treating that distinction as a "distinction without a difference." *Id.*

On Counts II and III, the court applied *Alexander v. Sandoval*, 532 U.S. 275 (2001) and *McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009), holding that the NSA's "shall be binding" and "shall be made" language creates a personal right for SpecialtyCare. A-012 (Cigna D.I. 26, p. 8); A-032 (UMR D.I. 24, p. 9). But the court held that Congress created no personal remedy because, in the court's view, the NSA contains a comprehensive administrative enforcement scheme. A-013–015 (Cigna D.I. 26, pp. 9–11); A-032–034 (UMR D.I. 24, pp. 9–11).

On Count IV, the court recognized that providers may sue under ERISA by assignment from plan participants. A-016 (Cigna D.I. 26, p. 12); A-035 (UMR D.I. 24, p. 12). But the court held that SpecialtyCare lacked Article III standing because the patients were protected from balance billing and therefore, in the court's view, suffered no concrete injury when plan benefits were not paid. A-015–017 (Cigna D.I. 26, pp. 11–13); A-034–036 (UMR D.I. 24, pp. 11–13).

13

Having dismissed all federal claims, the court declined supplemental jurisdiction over the Delaware claims. A-017–018 (Cigna D.I. 26, pp. 13–14); A-036–037 (UMR D.I. 24, pp. 13–14). The court did not reach the merits of those claims. *Id.*

In both cases, the court adopted the Reports and Recommendations, agreed with the Fifth Circuit's decision in *Guardian Flight, L.L.C. v. Health Care Service Corp.*, 140 F.4th 271 (5th Cir. 2025), *cert. denied*, No. 25-441 (U.S. Jan. 12, 2026) ("*Guardian Flight v. HCSC*"), and other district court decisions holding that there is no private right of action to enforce payment of an IDR award. A-003 (Cigna D.I. 29, p. 1); A-022 (UMR D.I. 27, p. 1). The court dismissed Counts I, II, and III with prejudice. A-004 (Cigna D.I. 29, p. 2); A-023 (UMR D.I. 27, p. 2). It dismissed Count IV without prejudice for lack of standing and dismissed Counts V, VI, and VII without prejudice after declining supplemental jurisdiction. *Id.*

SpecialtyCare timely appealed both judgments. A-001–002 (Cigna D.I. 30); A-020–021 (UMR D.I. 28).

## SUMMARY OF ARGUMENT

The district court recognized the right that should have controlled these cases. SpecialtyCare has a statutory right to payment under binding IDR awards. Its error was denying any federal remedy capable of enforcing that right.

This appeal should begin where the statute begins. Congress enacted the NSA to protect patients from surprise medical bills, but it did not authorize insurers to withhold money they were ordered to pay. Congress chose a different solution. It removed patients from covered out-of-network payment disputes, required plans and issuers to pay providers directly, created IDR when the parties cannot agree on the amount, made the resulting IDR award "binding upon the parties involved," and commanded that payment "shall be made" within 30 days. 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6). SpecialtyCare followed that process. Cigna and UMR lost over one thousand IDR disputes involving more than $1.6 million in awards. They did not pay. SpecialtyCare sued to enforce the awards.

The district court accepted the statutory premise that should have controlled the result. Applying *Sandoval* and *McGovern*, the court held that the NSA's "shall be binding" and payment "shall be made" language creates a personal right for SpecialtyCare. A-012 (Cigna D.I. 26, p. 8); A-032 (UMR D.I. 24, p. 9). But the court then held that Congress supplied no judicial remedy to enforce that same right. That

15

ruling gives providers a right to payment only if the losing payor chooses to honor it. That is no right at all. It turns a binding award into an optional unpaid invoice.

The principal contrary authority relied upon by the district court is the Fifth Circuit's decision in *Guardian Flight v. HCSC*. But that decision rests on three premises this Court should reject: it treats a bar on judicial review as a bar on enforcement; it treats public penalties as a substitute for private collection; and it treats Congress's failure to cite FAA § 9 as permission for nonpayment. None follows from the statutory text. Each makes the NSA's payment command optional.

The NSA's text and structure do not permit that result. The statute identifies the payor and payee, fixes the amount through IDR, makes the award binding, and imposes a payment deadline. SpecialtyCare seeks only award-specific enforcement after that deadline passed. It does not ask the Court to reopen IDR, reweigh the statutory factors, supervise the Departments, impose penalties, or create a damages action for every NSA violation.

Nor do the NSA's administrative provisions displace that narrow remedy. Civil penalties and regulatory action may impose a nominal penalty for NSA noncompliance more broadly, but they do not pay SpecialtyCare's awards, reduce them to judgment, provide execution process, or place the money in SpecialtyCare's hands. Even assuming an agency may seek corrective action in some circumstances, that is not an award-collection remedy.

16

Nor does the NSA's limit on judicial *review* bar judicial *enforcement*. SpecialtyCare does not ask any court to decide whether the certified IDR entities selected the right offers, weighed the statutory factors correctly, or reached the best reimbursement amount. Those issues have already been decided. SpecialtyCare asks only that Cigna and UMR obey awards Congress made binding. Judicial review tests whether an award should be disturbed. Judicial enforcement gives effect to an award that remains final. The NSA restricts the former. It does not prohibit the latter.

The FAA confirms the same point. The NSA's cross-reference to FAA § 10 identifies the narrow grounds for vacatur. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a). It does not make all non-vacated awards uncollectible. And Congress's failure to cross-reference FAA § 9 does not transform binding awards into optional payments. If FAA § 9 is an imperfect fit because NSA IDR awards arise by statute rather than contract, the answer is not that binding statutory awards are unenforceable. The answer is that the NSA supplies the source of enforceability. Either way, the district court erred by using the absence of an express § 9 cross-reference to nullify the NSA's own binding-award and payment commands.

SpecialtyCare also pleaded Article III standing and a viable ERISA claim. The district court focused on the absence of balance-bill exposure, but that is not the ERISA injury alleged here. The injury is the denial of plan benefits. ERISA § 502(a)(1)(B) permits participants and beneficiaries to recover benefits due under the

17

plan. 29 U.S.C. § 1132(a)(1)(B). Providers may pursue those claims by assignment. The NSA's ERISA amendments supply mandatory plan terms requiring covered ERISA plans to pay the out-of-network rate determined through IDR. When Cigna and UMR, or the plans they insure or administer, failed to pay those amounts, the plan participants were denied benefits required under their plans as modified by federal law. Congress's protection against balance billing prevents personal collection from the patient. It does not erase the plan's benefit obligation.

Finally, the Delaware claims should return to the district court if any federal claim is reinstated. The district court did not decide those claims on the merits. It declined supplemental jurisdiction only because it dismissed every federal claim. If this Court reverses on any federal claim, the basis for declining supplemental jurisdiction disappears.

The judgments of the district court should be reversed.

18

## STANDARD OF REVIEW

### I.     COUNTS I THROUGH IV

This Court reviews a Rule 12(b)(6) dismissal *de novo*. *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In considering a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

This Court also reviews Article III standing determinations *de novo*. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). Because the Insurers raised a facial standing challenge, the Court applies the Rule 12(b)(6) standard, accepting the complaints' well-pleaded allegations as true and drawing all reasonable inferences in SpecialtyCare's favor. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

## II.    COUNTS V THROUGH VII

The Court will review a district court's "refusal to exercise supplemental jurisdiction for abuse of discretion." *Fields v. City of Pittsburgh*, 714 F. App'x 137, 143 (3d Cir. 2017) (citing *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 172 (3d Cir. 2009)).

## ARGUMENT

**I.     The NSA Authorizes a Narrow Action to Enforce Unpaid, Final, Binding IDR Awards.**

The district court recognized the right but denied the remedy. It held that the NSA's "shall be binding" and "shall be made" language creates a personal right to payment. A-012 (Cigna D.I. 26, p. 8); A-032 (UMR D.I. 24, p. 9). But it then held that SpecialtyCare has no federal remedy to enforce that right. A-013–015 (Cigna D.I. 26, pp. 9–11); A-032–034 (UMR D.I. 24, pp. 9–11). That is not a plausible reading of a statute that fixes a payment amount through IDR, makes the result binding on the parties, and commands payment within 30 days.

The Court should begin with the statute Congress wrote. The NSA requires plans and issuers to pay out-of-network providers directly, supplies IDR to fix the amount when the parties cannot agree, makes the resulting award "binding upon the parties involved," and commands that payment "shall be made" within 30 days. 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6).

SpecialtyCare's theory is narrow. It does not ask this Court to create a general private damages action under the NSA. It does not ask the Court to review the merits of any IDR award. Nor does it ask the Court to decide whether the IDR entities selected the better offer, weighed the statutory factors correctly, or set the right reimbursement amount. Those questions have already been resolved. SpecialtyCare

21

asks only that Cigna and UMR comply with final IDR awards that Congress made binding and payable within 30 days.

That remedy follows from the statutory design. The NSA identifies the party required to pay, identifies the statutory recipient, fixes the amount through a binding IDR award, and sets the deadline for payment. Once that process ends, the losing party has nothing left to negotiate, revisit, or withhold. Judicial enforcement gives effect to that completed process. It does not reopen it.

a. **The NSA's Text Creates a Binding, Money-Mandating Payment Right.**

The NSA's operative provisions are not instructions to agencies alone. They create a concrete payment right between identified parties, and the direct-payment command sits at the center of the NSA's patient-protection framework. For covered out-of-network services, the plan or issuer must make the required initial payment directly to the provider. 42 U.S.C. § 300gg-111(a)(1)(C)(iv), (b)(1)(C)–(D). If the parties cannot agree on the total amount payable following an initial payment, the IDR process determines the out-of-network rate. *Id.* § 300gg-111(a)(3)(K)(ii)(II), (c)(1)(B). The IDR determination "shall be binding upon the parties involved," absent fraud or misrepresentation. *Id.* § 300gg-111(c)(5)(E)(i)(I). And the required payment "shall be made" within 30 days. *Id.* § 300gg-111(c)(6).

22

Those provisions identify the payor, the payee, the amount, and the payment deadline. They do not merely instruct agencies how to supervise a regulatory program. They impose a mandatory payment obligation between private parties.

This mandatory payment obligation is further borne out through *Sandoval* and this Court's implied-right framework. Under *Sandoval*, the "judicial task" is to determine whether the statute "displays an intent to create not just a private right but also a private remedy." 532 U.S. at 286 (citation omitted). This Court asks whether Congress intended to create a personal right in the plaintiff and a personal remedy for that plaintiff. *McGovern*, 554 F.3d at 116; *see also Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004) ("Congress's intent in enacting a statute is always the 'focal point' in determining whether courts should infer a private right of action from the statute.") (citation omitted). That inquiry begins with text and structure. *Sandoval*, 532 U.S. at 286, 288.

The NSA satisfies that standard because it creates a specific right to receive money from a specific counterparty after a specific statutory process. *Sandoval* emphasized the importance of "rights-creating" language directed to identifiable beneficiaries. *Id.* at 288–89. The NSA's payment provisions do exactly that. They do not simply authorize the Departments to regulate insurers in the abstract. They require the plan or issuer to pay the nonparticipating provider directly, and they make

the IDR award binding on "the parties involved." 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6).

The Supreme Court's reasoning in *Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020) confirms the point.[2] Mandatory "shall pay" language creates a money-mandating obligation even when Congress does not use "magic words explicitly inviting suit." *Id.* at 323 n.12, 324. Instead, the Court explained that when a statutory obligation to pay money is mandatory, the corresponding "right to receive money" will typically display an intent to provide a remedy. *Id.* Here, the NSA does more than say "shall pay." It creates an adjudicative process to fix the amount owed, makes the result binding on private parties, and imposes a 30-day deadline for payment.

The same conclusion also follows from a more basic legal proposition: "to say that A shall be liable to B is the express creation of a right of action." *Key Tronic Corp. v. United States*, 511 U.S. 809, 818 n.11 (1994) (quoting *id.* at 822 (Scalia, J., dissenting)); *see also FCC v. AT&T Inc.*, No. 25-406, slip op. at n.3 (U.S. June 4, 2026) (explaining that statutory language making a regulated entity liable "authorizes a lawsuit" and "creat[es] . . . a right of action"). The NSA uses the same structure. It identifies the party required to pay, identifies the statutory recipient,

---

[2] Although *Maine Cmty.* arose in the Tucker Act context, the Court tied its analysis to *Sandoval* and explained that the relevant inquiry remains whether the statute displays an intent to create a right and a remedy. *Maine Cmty.*, 590 U.S. at 323 n.12.

fixes the amount through a binding IDR award, and requires payment within 30 days. 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6).

The same principle applies here. Congress did not say that an IDR award may guide future negotiations. It said the award "shall be binding." *Id.* § 300gg-111(c)(5)(E)(i)(I). Congress did not say the losing party may pay when convenient. It said payment "shall be made" within 30 days. *Id.* § 300gg-111(c)(6). A binding award that the losing party may ignore is not binding in any practical sense. A mandatory payment obligation that cannot be enforced is not mandatory in any practical sense. The district court's reading creates the very problem *Maine Cmty.* rejected by making Congress's payment command meaningless. *Cf. Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 74–75 (1st Cir. 2005) (holding that statutory language requiring a state to "provide for payment to the center" was rights-creating because it was mandatory and ran to a discrete class of identified beneficiaries rather than regulating government conduct in the abstract).

The bilateral structure of IDR confirms that Congress created party-specific payment obligations, not a one-sided regulatory preference. Because an insurer usually makes an initial payment before IDR begins, an IDR award can require either side to pay money. If the selected offer exceeds the sum of the initial payment and cost sharing, the plan or issuer must pay the difference to the provider within 30 days. *Id.* § 300gg-111(c)(6); 45 C.F.R. § 149.510(c)(4)(ix). But if the selected offer

is lower, the provider is liable to the plan or issuer for the excess and must return the difference. 45 C.F.R. § 149.510(c)(4)(ix). The regulation reflects the necessary consequence of a binding award that fixes the total payment amount. A remedial theory that depends entirely on insurer-focused regulatory penalties cannot explain how Congress intended both sides of that binding payment obligation to be enforced.

The statutory structure confirms the text. Congress protected patients by limiting their cost sharing and barring providers from collecting the unpaid balance from them. 42 U.S.C. §§ 300gg-111(a)(1)(C)(ii)–(iii), (b)(1)(A)–(B), 300gg-131, 300gg-132. But Congress did not make providers absorb the balance. It shifted the payment dispute to the provider and the plan or issuer, required direct payment, created IDR when the parties cannot agree, made the IDR award binding, and imposed a 30-day payment deadline. *Id.* § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6).

The Insurers' reading breaks the statute's design. It keeps the patient protections but strips away the provider-payment mechanism that made those patient protections workable. It leaves providers unable to bill the patient, unable to relitigate the award, and unable to enforce the award against the losing payor. The NSA does not create binding IDR awards only for parties willing to honor them. Nothing in the NSA supports that result. The better reading gives each statutory

26

command operative force. The award is binding. The payment shall be made. There is a statutory recipient. The deadline is fixed. The right is enforceable.

**b.    The District Court Recognized SpecialtyCare's Personal Right to Payment but Erred by Denying Any Remedy.**

The district court held that the NSA creates a personal right to payment. That holding was correct. But the court then refused to recognize any federal remedy capable of enforcing that same payment right. The resulting rule is internally unstable. SpecialtyCare has a right to be paid, but Cigna and UMR may keep the money unless they voluntarily elect to pay. The district court's analysis identifies the error in its result.

The court applied the familiar *Sandoval* and *McGovern* inquiry, which asks whether Congress intended to create a personal right and a personal remedy. *Sandoval*, 532 U.S. at 286, 288; *McGovern*, 554 F.3d at 116; *see also Three Rivers*, 382 F.3d at 421. The court answered the first question in SpecialtyCare's favor. It held that the NSA's "shall be binding" and "shall be made" language creates a personal right for SpecialtyCare. A-012 (Cigna D.I. 26, p. 8); A-032 (UMR D.I. 24, p. 9). That holding was correct. The court erred by then denying any judicial remedy capable of enforcing the payment right it had just recognized. A-013–015 (Cigna D.I. 26, pp. 9–11); A-032–034 (UMR D.I. 24, pp. 9–11).

The right recognized by the district court is not abstract. It is not a generalized right to agency attention, a right to participate in a regulatory program, or a right to

27

fair treatment. It is a concrete right to payment. It arises only after the IDR process has run its course and a private neutral has selected the amount owed. It belongs to the parties to the IDR process. It requires payment within 30 days. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), (c)(6).

The remedy SpecialtyCare seeks is no broader than the right the statute creates. SpecialtyCare seeks enforcement of final IDR awards after the statutory 30-day payment deadline has expired. That conclusion respects, rather than evades, this Court's implied-right framework. A personal right does not always imply a private remedy. *See McGovern*, 554 F.3d at 116; *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007) ("[A] statute must manifest Congress's intent to create (1) a personal right, and (2) a private remedy.") (internal quotation omitted). But here, the same provisions that create the payment right *also* define the remedy needed to enforce it. The award is binding. A neutral fixes the amount payable. The payor and payee are identified. Payment must be made within 30 days.

SpecialtyCare does not ask a court to reopen IDR, reweigh the statutory factors, supervise the Departments, impose penalties, or create a damages action for every NSA violation. It seeks a narrow award-enforcement remedy for final, unpaid, binding IDR awards after the statutory 30-day payment deadline has passed. That remedy would not alter the award, review the merits, or regulate future conduct. It

28

would convert an already-binding statutory payment obligation into an enforceable judgment.

This Court has rejected statutory readings that recognize an individual entitlement while leaving the beneficiary without the relief needed to remedy its denial. *See, e.g., Lester H. v. Gilhool*, 916 F.2d 865, 872–73 (3d Cir. 1990). That principle does not replace *Sandoval*. It confirms why the remedy question must be answered from the statute's text and structure. The NSA does not create an abstract entitlement. It creates a fixed payment obligation, makes the resulting award binding on the parties, and commands payment within a fixed time. Reading that scheme to create a right to payment but no judicial means to enforce payment would make the right depend on the losing party's voluntary compliance.

That limited remedy is exactly what the complaints sought. SpecialtyCare alleged that Cigna owes $1,360,403 under 789 unpaid IDR awards and that UMR owes $256,427 under 300 unpaid IDR awards. A-039 (Cigna D.I. 1 ¶ 2); A-052–071 (Cigna D.I. 1-1); A-338 (UMR D.I. 1 ¶ 2); A-351–359 (UMR D.I. 1-1). The complaints seek enforcement of those award-specific payment obligations. A-046-47 (Cigna D.I. 1 ¶¶ 38–47); A-345–346 (UMR D.I. 1 ¶¶ 38–47). Converting those binding awards into enforceable judgments would not enlarge the NSA. It would enforce what the NSA already requires.

29

The district court denied a remedy because it viewed the NSA's administrative provisions as a substitute for judicial enforcement. A-013–015 (Cigna D.I. 26, pp. 9–11); A-032–034 (UMR D.I. 24, pp. 9–11). But an alternative enforcement mechanism must address the right the statute creates. The right here is the right to receive payment of a binding IDR award. A civil penalty paid to the government does not pay SpecialtyCare's awards. A discretionary enforcement process does not reduce an IDR award to judgment. The possibility of later regulatory action does not make Cigna or UMR comply with the 30-day payment command in any particular case.

The better-reasoned district court decisions have understood the remedy in those limited terms. The District of Maryland held in *PHI Health, LLC v. Optimum Choice, Inc.* that the NSA impliedly authorizes a narrow private action to convert a binding IDR award into a judgment when the obligated party fails to comply with the statutory payment obligation. No. 25-cv-02320-ABA, 2026 WL 850453, at *10–11 (D. Md. Mar. 27, 2026). The District of Maryland later applied the reasoning in *PHI Health* to SpecialtyCare's own IDR award enforcement claim, holding that SpecialtyCare has a viable claim under the NSA to enforce unpaid IDR awards. *SpecialtyCare, Inc. v. CareFirst of Maryland, Inc.*, No. 1:25-cv-00130-ABA, 2026 WL 1656946, at *2–3 (D. Md. June 9, 2026). The District of Connecticut reached

the same basic conclusion in *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227–28 (D. Conn. 2025) ("*Guardian Flight v. Aetna*").

Having held that the NSA gives SpecialtyCare a personal right to payment under binding IDR awards, the district court here should have recognized a corresponding remedy to enforce that right. That remedy is narrow and supported by the NSA's statutory framework.

### c.    The NSA's Administrative Provisions Do Not Enforce IDR Awards and Do Not Displace Judicial Enforcement.

The district court treated regulatory enforcement as a substitute for judicial enforcement of unpaid IDR awards. It is not. The right at issue is the right to receive payment of a final IDR award. A civil penalty paid to the government is not execution process. None of the NSA's administrative mechanisms collects the amount owed, reduces the award to judgment, or places the money in the prevailing party's hands. *See* A-013–015 (Cigna D.I. 26, pp. 9–11); A-032–034 (UMR D.I. 24, pp. 9–11).

That distinction controls the remedial inquiry. Administrative enforcement may inform the *Sandoval* analysis, but only if the administrative scheme addresses the right the statute creates. *See Sandoval*, 532 U.S. at 286, 290. Here, the statutory right is award-specific payment within 30 days. The administrative provisions cited by the district court may deter or punish some noncompliance, but they do not enforce the award itself. They do not provide an enforcement mechanism for the

31

right to payment the district court recognized. Nor do they show that Congress meant to leave unpaid IDR awards to discretionary regulatory action.

Nor are the administrative provisions comprehensive in the relevant sense. NSA obligations apply across different statutory regimes and regulated entities. For some fully insured coverage and non-federal governmental plans, state regulators or the Department of Health and Human Services may enforce the NSA's provisions incorporated into the PHS Act and may impose civil monetary penalties in appropriate circumstances. *See* 42 U.S.C. § 300gg-22(a), (b)(2)(A). For ERISA-governed plans, the Department of Labor may seek equitable relief for violations of ERISA's incorporated NSA requirements. *See* 29 U.S.C. § 1132(a)(5). The Department of the Treasury may impose excise taxes for failures to comply with applicable group-health-plan requirements. *See* 26 U.S.C. §§ 4980D, 9816, 9834. Those provisions create regulatory oversight across different plan types and different regulated entities. But none gives a prevailing provider an order requiring payment of a particular IDR award. None gives the provider a judgment. None supplies execution process. An excise tax is not a judgment. A discretionary agency complaint is not a collection remedy. None of those tools gives SpecialtyCare the money Cigna and UMR were required to pay. The district court therefore treated deterrence as compensation and regulatory oversight as collection. The statute does not support that substitution.

32

The United States government made this same point in the Fifth Circuit proceedings that produced *Guardian Flight v. HCSC*. In its amicus brief, the United States explained that the NSA's administrative mechanisms are not comprehensive substitutes for judicial enforcement of unpaid IDR awards. A-154–157 (Cigna D.I. 18-1, pp. 13–16). The agencies charged with administering the NSA did not tell the Fifth Circuit that their enforcement tools were an adequate replacement for judicial enforcement. They told the court that the NSA's text, structure, purpose, and history support judicial enforcement of the statutory payment obligation. A-154–157 (Cigna D.I. 18-1, pp. 13–16).

The better-reasoned district court decisions have reached the same conclusion. The District of Maryland held in *PHI Health* that "[n]othing in the No Surprises Act authorizes HHS (or DOL or Treasury or any state agency for that matter) to order a payor that is in violation of the Act to comply with an IDR determination." 2026 WL 850453, at *10. The court further explained that civil monetary penalties are not an "enforcement scheme," let alone a comprehensive one, because they do not enforce the award itself. *Id.* Even assuming an agency may seek corrective action in some cases involving some regulated entities, that still would not create an award-collection remedy.

33

The bilateral nature of IDR confirms that the administrative provisions are not a comprehensive substitute for award enforcement.[3] IDR awards can require either side to pay. If the award exceeds the initial payment and cost sharing, the plan or issuer must pay the provider the difference within 30 days. 42 U.S.C. § 300gg-111(c)(6); 45 C.F.R. § 149.510(c)(4)(ix). If the award is lower than the amount already paid, the provider is liable for the excess and must return the difference. 45 C.F.R. § 149.510(c)(4)(ix). A theory built on insurer-focused penalties does not explain how provider-side repayment obligations are enforced. Congress made IDR determinations binding on "the parties involved." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). The remedy must fit that bilateral command.

The provider-enforcement provisions confirm the gap. Section 300gg-134 appears in Part E of the PHS Act, which addresses "Health Care Provider Requirements." 42 U.S.C. §§ 300gg-131 to -134. Those provisions address patient-facing obligations, including balance-billing restrictions, disclosures, and notice-and-consent rules. *See id.* §§ 300gg-131 to -133. Section 300gg-134 does not mention § 300gg-111, does not address IDR awards, and does not create a mechanism to enforce a provider's obligation to return an overpayment after IDR. If

---

[3] To SpecialtyCare's knowledge, neither the Fifth Circuit in *Guardian Flight v. HCSC* nor any district court decision following it has reconciled the bilateral structure of IDR and the payment obligations flowing from it with the absence of any provider-side administrative enforcement mechanism.

34

the administrative provisions were exclusive, the statute would create binding payment duties running both directions but leave one side of that bilateral award without any enforcement path whatsoever.

The Insurers' answer will be that some administrative enforcement is enough. That is not *Sandoval*. *Sandoval* asks whether Congress intended to create a right and remedy. 532 U.S. at 286, 288. Here, the statute as a whole demands enforcement. Congress created a direct payment obligation between private parties, made the IDR award binding, imposed a payment deadline, and limited judicial review of the award's merits. It did not say that a prevailing provider's only recourse is to ask an agency to pursue a penalty payable to the government, not the provider itself.

The district court's rule would reward the very nonpayment the statute forbids. A losing payor could refuse to pay, keep the money, and wait to see whether an agency takes discretionary action. If no agency acts, the payor keeps the benefit of noncompliance. If an agency does act, any penalty still does not collect the award for SpecialtyCare. Congress did not create a binding 30-day payment obligation to leave collection to that arrangement.

### d.     A Bar on Judicial Review Is Not a Bar on Judicial Enforcement.

The NSA's judicial-review clause preserves the finality of IDR awards. It does not create immunity from enforcement. The district court treated SpecialtyCare's distinction between judicial review and judicial enforcement as

35

immaterial. A-009–011 (Cigna D.I. 26, pp. 5–7); A-028–030 (UMR D.I. 24, pp. 5–7). That approach reads the review limitation too broadly and the binding-award command too narrowly.

The statutory sequence points in the other direction. Congress first provided that an IDR award "shall be binding upon the parties involved[.]" 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). Congress then provided that the award "shall not be subject to judicial review" except in a case described in FAA § 10(a). *Id.* § 300gg-111(c)(5)(E)(i)(II). Read together, those provisions mean that courts generally may not disturb the award. They do not mean that courts may not enforce it.

SpecialtyCare does not seek judicial review of the IDR awards. It does not ask a court to decide whether the private neutrals selected the correct offers, weighed the statutory factors correctly, or reached the best reimbursement amount. Certified IDR entities already resolved those issues. SpecialtyCare seeks only to enforce final and binding awards that Cigna and UMR refused to pay. A-039–040, 043–047 (Cigna D.I. 1 ¶¶ 2, 6, 22–27, 32, 38–47); A-338–339, 343–346 (UMR D.I. 1 ¶¶ 2, 6, 22–27, 32, 38–47). Enforcement gives effect to an existing obligation. Review tests whether that obligation should stand.

The District of Connecticut explained why the contrary reading is wrong in *Agag v. Cigna Health & Life Ins. Co.*, No. 3:25-cv-00498-SRU, 2026 WL 1021213, at *9–12 (D. Conn. Apr. 15, 2026). Cigna argued there, as the Insurers will argue

36

here, that enforcement of an IDR award is barred because the NSA says awards are not subject to "judicial review." *Id.* The court rejected that argument because it gives the phrase "judicial review" a meaning Congress did not choose. *Id. Guardian Flight v. HCSC* made that mistake by defining "review" broadly enough to swallow enforcement. *See* 140 F.4th at 275. But the statutory phrase is "*judicial* review," and in context it refers to a court's examination of an adjudicative determination for legal or factual error. *See Agag*, 2026 WL 1021213, at *9–12. A summary enforcement action does not require that kind of review. It assumes the award stands and asks only whether the losing party must comply.

This Court's arbitration precedent confirms the same principle. Confirmation "of an arbitration award is a summary proceeding" and "is not to be confused with litigating a dispute over the validity or accuracy of [the] award under § 10 or § 11." *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 252–53 (3d Cir. 2020). FAA § 10 supplies narrow grounds for disturbing an award. 9 U.S.C. § 10(a). The NSA borrows those grounds to limit judicial review. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Nothing in that borrowing suggests that Congress barred courts from enforcing awards that have not been challenged or vacated.

The district court's reading turns finality into nonpayment. A review bar ordinarily prevents losing parties from reopening the merits. Under the district court's reading, however, the losing payor may avoid both merits review and

37

payment. The award is final enough to prevent relitigation, but not enforceable enough to require compliance.

The better-reasoned district court decisions reject that result. The District of Maryland held in *PHI Health* that, in context, "judicial review" refers to lawsuits challenging an IDR award, not lawsuits seeking to enforce or confirm one. 2026 WL 850453, at *9. The District of Connecticut likewise held in *Guardian Flight v. Aetna* that NSA IDR awards arise by operation of federal law and immediately trigger statutory payment obligations. 789 F. Supp. 3d at 227. Because the awards are already binding by statute, judicial confirmation is not required to make them binding. *Id.* The point is not that courts must revisit the award. The point is that courts may enforce the payment obligation the award creates.

The 30-day payment command confirms the point. If the judicial-review clause barred enforcement, the payment deadline would be largely pointless. Congress did not say payment may be made if the losing party chooses. It said payment "shall be made" within 30 days. 42 U.S.C. § 300gg-111(c)(6). The statute does not use voluntary language. It uses mandatory language directed to the parties themselves.

### e. The Better-Reasoned Authorities Give Effect to the NSA's Text and Structure.

The district court followed *Guardian Flight v. HCSC* and the district-court decisions that have adopted its reasoning. A-003 (Cigna D.I. 29, p. 1); A-022 (UMR

D.I. 27, p. 1). Those decisions are not binding on this Court, and their reasoning should not be followed. They begin with isolated features of the statute, including the judicial-review limitation, the absence of an express FAA § 9 cross-reference, and the existence of potential administrative penalties. They do not give operative force to the statute as a whole. Congress protected patients from balance billing, required direct payment to providers, created IDR to fix the amount owed, made the resulting award binding, and commanded payment within 30 days. The adverse decisions leave the private payment commands something Congress did not choose: non-binding and voluntary.

The disagreement among district courts should be resolved by statutory text and structure. The District of Connecticut in *Guardian Flight v. Aetna* and *Agag* and the District of Maryland in *PHI Health* and *CareFirst* read the NSA as a payment statute with a binding dispute-resolution mechanism. The adverse cases treat the statute as though it created only an administrative process and a narrow vacatur path. That reading elevates statutory omissions and regulatory enforcement provisions over the operative words Congress used.

The District of Connecticut gave those words their natural effect in *Guardian Flight v. Aetna*, 789 F. Supp. 3d at 227–28. The court held that the NSA's "binding" and payment "shall be made" language evinces congressional intent to allow judicial enforcement of IDR awards. *Id.* at 227–28. It also explained that Congress placed

the binding-award language immediately before the judicial-review limitation and located both provisions in the subsection addressing the "Effects of determination." *Id.* at 228. That placement shows that Congress meant to preserve the binding effect of IDR awards while preventing courts from undermining their substance or finality through merits review in most cases. *Id.*

The District of Maryland reached the same result in *PHI Health*, 2026 WL 850453, at *10–11. It held that the NSA impliedly authorizes a narrow private action to convert a binding IDR award into a judgment when the obligated party fails to comply with its statutory payment obligation. *Id.* The court reasoned that the NSA creates a private right because IDR awards are binding and payment must be made within 30 days. *Id.* at *7–8, *10. It also rejected the argument that administrative penalties displace judicial enforcement because civil penalties do not order payment of a particular award, do not compensate the provider, and do not supply a comprehensive award-enforcement scheme. *Id.* at *10.

The District of Maryland then applied *PHI Health* to SpecialtyCare's own IDR award enforcement theory in *CareFirst*, holding that SpecialtyCare has a viable claim under the NSA to enforce unpaid IDR awards. *CareFirst*, 2026 WL 1656946, at *3–4. That decision involved the same provider, the same type of unpaid IDR awards, and the same statutory theory presented here.

The District of Connecticut provided a complementary path in *Agag*, 2026 WL 1021213, at *9–13. The court held that the NSA itself supports federal-question jurisdiction and confirmation of IDR awards, although FAA § 9 does not independently apply because NSA IDR awards arise by statute rather than contract. *Id.* That reasoning reinforces SpecialtyCare's core point. If FAA § 9 is an imperfect fit because NSA IDR is statutory, the answer is not that binding statutory awards are unenforceable. The answer is that the NSA supplies the source of enforceability. *Id.*

The adverse cases make three recurring errors. First, they treat the judicial-review limitation as an enforcement bar. *Guardian Flight v. HCSC* held that "judicial review" is broad enough to include judicial enforcement of an IDR award. 140 F.4th at 275. Other courts parroted that conclusion. *See, e.g.*, *Modern Orthopaedics of NJ v. Premera Blue Cross*, No. 2:25-cv-01087 (BRM) (JSA), 2025 WL 3063648, at *12–13 (D.N.J. Nov. 3, 2025); *East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25 Civ. 255 (PAE), 2025 WL 2371537, at *17–18 (S.D.N.Y. Aug. 14, 2025). But a limitation on disturbing an award is not a prohibition on enforcing an award that remains binding.

Second, they treat administrative penalties as award enforcement. *Guardian Flight v. HCSC* relied on civil penalties under 42 U.S.C. § 300gg-22(b)(2)(A), reasoning that Congress chose administrative enforcement rather than private enforcement. 140 F.4th at 277. The district court adopted that rationale. A-013–14

41

(Cigna D.I. 26, pp. 9-10); A-032–033 (UMR D.I. 24, pp. 9–10). But penalties do not pay the award, reduce it to judgment, or compensate the prevailing party. A remedial scheme that does not remedy the unpaid award is not a substitute for judicial enforcement of the award.

Third, they give dispositive weight to the absence of an FAA § 9 cross-reference. Several courts have reasoned that because Congress incorporated the vacatur grounds in FAA § 10 but did not incorporate FAA § 9, courts cannot confirm or enforce IDR awards. *See, e.g.*, *Guardian Flight v. HCSC*, 140 F.4th at 276–77; *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1082–86 (M.D. Fla. 2023); *Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-cv-20428-GAYLES, 2025 WL 742761, at *3 & n.2 (S.D. Fla. Mar. 9, 2025). That inference asks the wrong statutory question. FAA § 9 confirms arbitration awards arising from private agreements. 9 U.S.C. § 9. NSA IDR awards are binding because Congress made them binding. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). The absence of a § 9 cross-reference may bear on whether FAA § 9 independently supplies a confirmation mechanism. It does not erase the NSA's own command that the award "shall be binding" and that payment "shall be made" within 30 days.

Those errors produce a statutory scheme Congress did not enact: the patient cannot be billed, the provider cannot relitigate the award, the provider cannot collect the award through an agency, and the court cannot enforce the award. The NSA does

42

not create binding IDR awards only for parties willing to honor them. It creates a statutory payment obligation enforceable by the prevailing party when the losing party refuses to pay. The contrary authorities transform Congress's binding-award system into a voluntary-payment system. The text does not permit that result.

## II. The District Court Also Erred in Dismissing SpecialtyCare's FAA Confirmation Claim.

Section I explains why the NSA itself authorizes enforcement of unpaid binding IDR awards. The dismissal of SpecialtyCare's FAA claim presents a related, narrower error. The district court did not simply hold that FAA § 9 is an imperfect fit for statutory IDR awards. It drew a broader inference from Congress's failure to cross-reference § 9 and used that inference to make binding IDR awards unenforceable. A-009–011 (Cigna D.I. 26, pp. 5–7); A-028–030 (UMR D.I. 24, pp. 5–7). That inference was wrong.

The NSA's cross-reference to FAA § 10 shows that Congress wanted narrow vacatur review. It does not show that Congress wanted binding IDR awards to be unenforceable. The IDR process produces awards that function like arbitral awards. Section 10 limits when those awards may be disturbed. And Congress's choice not to cross-reference § 9 does not turn a binding statutory award into an optional payment request.

43

### a. The NSA's IDR Process Produces Binding Awards That Function Like Arbitral Awards.

The NSA's IDR process has the essential features of arbitration. The statute sends a defined payment dispute between adverse parties to a neutral decisionmaker. 42 U.S.C. § 300gg-111(c)(1)(B). Each side submits a payment offer and supporting information. *Id.* § 300gg-111(c)(5)(B). The neutral applies statutory factors and selects one offer. *Id.* § 300gg-111(c)(5)(A), (c)(5)(C). A binding award is rendered which fixes the parties' payment obligations. *Id.* § 300gg-111(c)(5)(E)(i), (c)(6). And judicial *review* is limited to narrow vacatur grounds. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

Those are the core features of an arbitral award. The parties submit a defined dispute to a neutral. The neutral resolves it through a prescribed process. The decision fixes the parties' rights and obligations. The award is final, binding, and subject only to limited review. The NSA's final-offer structure reinforces that character. Final-offer arbitration is still arbitration. The neutral's task is to select one side's number rather than craft a new one.

The statutory source of the parties' obligation does not change the character of the award. Ordinary arbitration usually arises from contract. NSA IDR arises from federal law. But Congress supplied by statute what private parties often supply by agreement. It required the parties to use IDR, submission of competing offers, the neutral's selection of one offer, a binding award, and limited review. *Id.* § 300gg-

111(c)(2)(A), (c)(4), (c)(5)(A)–(E). Cigna and UMR cannot avoid the consequences of that process by arguing that Congress, rather than a private arbitration clause, made the awards binding.

Comparable statutory arbitration schemes confirm that binding statutory awards carry ordinary enforcement consequences. In *Cheminova A/S v. Griffin LLC*, the court addressed Congress's statutory arbitration process under FIFRA for resolving compensation disputes. 182 F. Supp. 2d 68, 70–73 (D.D.C. 2002). The statute did not contain FAA § 9's express confirmation language, but it made the awards binding and final. *Id.* at 72–75. The court held that the awards were enforceable because a binding statutory arbitration process would otherwise fail in its purpose. *Id.* at 73–77. The same principle applies here. Congress created a binding statutory process to determine payment. Judicial confirmation gives effect to that process. It does not rewrite it.

This Court's FAA precedent reflects the same limited role for confirmation. Confirmation is a "summary proceeding" that "merely makes what is already a final arbitration award a judgment of the court." *Teamsters Loc. 177*, 966 F.3d at 248 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). SpecialtyCare seeks that kind of relief. It does not ask the Court to decide the proper reimbursement amount. Certified IDR entities already did that. SpecialtyCare asks the Court to enforce binding awards because Cigna and UMR refused to pay them.

**b.    FAA § 10 Limits Vacatur Review, but It Does Not Make Unpaid IDR Awards Unenforceable.**

The NSA's incorporation of FAA § 10 confirms finality. It does not create unenforceability. And nothing in FAA § 10 suggests that a final, binding award becomes uncollectible if the losing party simply refuses to pay. Instead, FAA § 10 identifies the narrow circumstances in which a court may vacate an award, including corruption, evident partiality, misconduct, or action exceeding the arbitrator's powers. 9 U.S.C. § 10(a). By borrowing those grounds, Congress specified when a court may disturb an IDR award. Congress did not say that courts may never enforce an award that remains binding.

This is not a novel concept, as the FAA expressly separates confirmation from vacatur. A party may seek confirmation under FAA § 9, and the court "must grant" the order unless the award is vacated, modified, or corrected under FAA §§ 10 or 11. 9 U.S.C. § 9; *see also Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582, 587 (2008). Confirmation is not a second arbitration, a merits review, or a judicial redetermination of the amount owed. It is the mechanism for giving legal effect to an award that remains final.

The district court inverted that framework. The district court reasoned that because Congress cross-referenced FAA § 10 but not FAA § 9, Congress permitted only vacatur review and excluded confirmation or enforcement. A-009–011 (Cigna D.I. 26, pp. 5–7); A-028–030 (UMR D.I. 24, pp. 5–7). But FAA § 10 is a limit on

46

the grounds for setting aside an award. It is not a limit on enforcing an otherwise undisturbed, final and binding award. A statute that borrows vacatur standards does not thereby make all non-vacated awards uncollectible.

The district court's reading creates an irrational enforcement rule. If a losing payor files a FAA § 10 challenge and loses, the award remains binding and must be confirmed. But under the district court's rationale, if the same payor never files a challenge and simply refuses to pay, the prevailing provider has no judicial path to enforcement. The award would become enforceable only after a losing IDR party files a vacatur challenge in court and loses again, but unenforceable when no challenge is brought at all. The District of Connecticut rejected that result in *Guardian Flight v. Aetna* because it would make IDR awards effectively enforceable only when first challenged and then upheld. 789 F. Supp. 3d at 228.

The better reading treats FAA § 10 as Congress used it. Section 10 supplies a narrow vacatur filter. 9 U.S.C. § 10(a). It preserves the finality of IDR awards by preventing merits relitigation except in extraordinary circumstances. It does not erase the separate statutory commands that the award is binding and that payment shall be made within 30 days. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), (c)(6). Once an IDR award issues and no vacatur ground is established, confirmation or enforcement does not undermine the NSA. It implements the finality Congress chose.

47

c.      **Congress's Failure to Cross-Reference FAA § 9 Does Not Turn Binding Awards Into Optional Payments.**

The district court drew the wrong inference from Congress's failure to cross-reference FAA § 9. The NSA expressly references FAA § 10 because Congress wanted narrow vacatur review for IDR awards. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). But the statute does not say that FAA § 9 is forbidden, that confirmation is unavailable, or that a losing payor may ignore an award Congress made binding. The omission of FAA § 9 cannot carry that weight when the adjacent statutory commands say the award "shall be binding" and payment "shall be made" within 30 days. *Id.* § 300gg-111(c)(5)(E)(i)(I), (c)(6).

Section 9 addresses a different problem. In ordinary arbitration, the award arises from a private agreement, so FAA § 9 supplies a mechanism for converting that contract-based award into a judgment when the parties agreed judgment may be entered. 9 U.S.C. § 9. NSA IDR awards arise differently. Their binding force comes from federal law. Congress itself made the award binding, imposed the payment obligation, and set the deadline. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), (c)(6). The absence of an express FAA § 9 cross-reference therefore does not show that Congress intended nonenforcement. It shows only that Congress created a statutory award whose binding force does not depend on private consent.

The District of Connecticut explained the point in *Guardian Flight v. Aetna.* NSA IDR awards arise without a private arbitration agreement and immediately

48

trigger statutory payment obligations. 789 F. Supp. 3d at 227. Because those awards are already binding by statute, nothing else is required to make them binding. *Id.* Congress therefore had no reason to cite FAA § 9 to give the awards binding effect. Congress did that work itself in the NSA.

The District of Connecticut took arguably a more cautious path in *Agag*, but the result still supports SpecialtyCare. The court held that FAA § 9 did not independently apply because NSA IDR awards arise by statute rather than contract. *Agag*, 2026 WL 1021213, at *8. But the court did not conclude that the awards were unenforceable. *See generally id.* It held that the NSA itself supports confirmation of IDR awards through a summary proceeding that does not involve merits review. *Id.* at *9–12. If FAA § 9 is an imperfect fit because NSA IDR is statutory, the answer is not that binding statutory awards are unenforceable. The answer is that the NSA supplies the source of enforceability.

The district court here turned the omission of FAA § 9 into a prohibition Congress never enacted. A-009–011 (Cigna D.I. 26, pp. 5–7); A-028–030 (UMR D.I. 24, pp. 5–7). But statutory silence about one procedural mechanism is not a license for nonpayment, especially where the statute elsewhere creates a binding award and commands payment. Congress's reference to FAA § 10 identifies when an award may be set aside. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). It does not silently negate the separate payment obligation when no vacatur ground exists.

49

The absence of a FAA § 9 cross-reference cannot defeat the NSA's own command. If this Court concludes that FAA § 9 does not independently supply the confirmation vehicle because NSA IDR awards arise by statute, that conclusion supports the NSA enforcement theory addressed above. It does not support affirming the district court's holding that the awards are unenforceable.

## III.    SpecialtyCare Has Article III Standing and States an ERISA § 502(a)(1)(B) Claim.

The district court dismissed the ERISA claim on the wrong injury theory. In its view, the patients were protected from balance bills and therefore, in the court's view, suffered no concrete injury. A-015–017 (Cigna D.I. 26, pp. 11–13); A-034–036 (UMR D.I. 24, pp. 11–13). But the question is not whether the patients could be balance billed. Instead, the question is whether ERISA-plan benefits due were paid. SpecialtyCare alleged covered services, ERISA-governed plans, written assignments, binding IDR awards, and nonpayment of benefits owed under those plans as modified by the NSA. A-042–043, 047–048 (Cigna D.I. 1 ¶¶ 13–16, 21–22, 49–56); A-341–343, 346–347 (UMR D.I. 1 ¶¶ 13–16, 21–22, 49–56).

Once the injury is correctly understood, the ERISA claim is straightforward. ERISA permits participants and beneficiaries to recover benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B). Providers may sue as assignees. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). And the NSA's ERISA amendments supply mandatory plan terms governing payment for covered out-of-

network services. 29 U.S.C. § 1185e(a)(1)(C)(iv), (b)(1)(D), (c)(1), (c)(6). Even if the Court rejects judicial enforcement of IDR awards under the NSA, Count IV independently requires vacatur of the district court's dismissal of SpecialtyCare's ERISA cause of action.

### a.    The Injury Is the Denial of Plan Benefits, Not Exposure to a Balance Bill.

The ERISA injury is the denial of plan benefits. ERISA § 502(a)(1)(B) authorizes a participant or beneficiary to sue "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has described that cause of action as "relatively straightforward" because when "benefits promised to [a participant] under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). The injury is the failure to provide the promised benefit, not whether the patient later received a balance bill.

The NSA's patient protections explain why the benefit is paid to SpecialtyCare rather than collected from the patient. Congress limited patient cost sharing, prohibited balance billing in covered circumstances, and required plans and issuers to pay providers directly. 42 U.S.C. §§ 300gg-111(a)(1)(C)(ii)–(iv), (b)(1)(A)–(D), 300gg-131, 300gg-132. The parallel ERISA provisions impose the same payment framework on covered ERISA plans. 29 U.S.C. § 1185e(a)–(c). When an ERISA plan fails to pay the benefit federal law requires, the participant loses the

benefit of the plan's promise even if Congress also protected the participant from personal collection. The district court's contrary rule would make the NSA self-defeating. Congress protected patients from balance bills so they would not be caught in payment disputes. That protection does not erase the plan's payment obligation.

That injury is concrete under this Court's framework. To determine concreteness, this Court asks "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms[.]" *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)); *accord Cook v. GameStop, Inc.*, 148 F.4th 153, 158 (3d Cir. 2025). The nonpayment of a plan benefit owed is a monetary harm, the paradigm case of concreteness. This is not the attenuated, intangible injury that failed in *Barclift* and *Cook*; it is the loss of money the plan was required to pay. That a participant (or a statute) directed payment to the provider does not change the analysis. *See North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 193 (5th Cir. 2015) (a patient suffers concrete injury when money owed is not paid, "regardless of whether she has directed the money be paid to a third party"); *accord Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020) (participants are injured when a plan administrator fails to pay a

52

provider in accordance with the plan's terms). SpecialtyCare's assignors had a right to plan benefits, and Cigna and UMR, or the plans they insure or administer, failed to pay them.

Nor is this a bare statutory violation repackaged as injury. *See TransUnion*, 594 U.S. at 425–27. The harm is the classic kind: a participant was promised health-plan benefits, federal law supplied mandatory payment terms for those benefits, and the benefits were not paid. The assignment changes only who holds the claim, not whether a concrete injury occurred. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008).

Nor does *Thole* support the district court's ruling. The plaintiffs in *Thole* were defined-benefit pension participants who would receive the same monthly pension payments no matter how the case came out. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540–42 (2020). They had received every dollar promised to them and sought relief for alleged fiduciary mismanagement that would not affect their benefits. *Id.* SpecialtyCare alleges something different—health-plan benefits were due and not paid at all.

This Court's decision in *Knudsen* reinforces that point. The problem there was that the plaintiffs did not allege denial of promised benefits. They alleged plan-asset and rebate theories tied to speculative effects on premiums, reserves, or cost sharing. *See Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 579 (3d Cir. 2024). SpecialtyCare,

53

as an assignee, alleges the opposite. It alleges unpaid health-plan benefits, not speculative mismanagement of plan assets.

The Fifth Circuit reached the opposite conclusion in *Guardian Flight v. HCSC*, but that conclusion rests on the same premise the district court adopted here. The court treated the absence of balance-bill exposure as eliminating any concrete injury to plan participants. 140 F.4th at 278. That approach confuses personal liability with benefit entitlement. A patient can be protected from collection and still be denied the plan benefit that should have been paid. The District of Connecticut correctly rejected the same "no balance bill, no injury" theory in *Guardian Flight v. Aetna*, holding that failure to pay IDR awards remains a concrete injury even where patients are protected from out-of-pocket liability. 789 F. Supp. 3d at 231–32.

SpecialtyCare's alleged injury is concrete, particularized, and redressable. In exchange for paid premiums, its assignors were entitled to benefits under ERISA-governed plans as modified by the NSA's surprise-billing provisions. Cigna and UMR, or the plans they insure or administer, failed to pay those benefits. A judgment requiring payment would redress that denial, and SpecialtyCare has standing to pursue such a claim.

### b.     SpecialtyCare May Assert a Denial of Benefits Claim as Assignee.

SpecialtyCare alleged that the patients assigned their benefit claims and payment rights in writing. Those allegations must be accepted as true. The district

court did not hold otherwise. Nor did it dismiss based on any anti-assignment clause. It recognized that providers may sue under ERISA by assignment,[4] but held that the assignors had no injury once protected from balance billing.

Once the injury is correctly identified as denial of benefits, the assignment issue follows from settled law. *See N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372–73; *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) (holding that an assignee may sue based on the assignor's injury in fact). A provider assigned the right to payment may sue to recover that payment. Because the participants suffered injury when plan benefits were not paid, SpecialtyCare may sue as assignee to recover those benefits. Otherwise, the assignment would transfer a right with no practical means of enforcement.

### c.     The NSA's ERISA Amendments Supply Enforceable Plan Terms.

The ERISA claim does not require SpecialtyCare to identify plan language that independently repeats the NSA. Congress amended ERISA to require covered plans to provide and pay for certain out-of-network services, to determine the out-of-network rate through IDR when necessary, to make the IDR determination

---

[4] This Court's decision in *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.* controls the practical effect of those assignments. There, the Court held that a provider with an assignment of benefits may sue under § 502(a)(1)(B) because an assignment of the right to payment logically includes the right to sue for nonpayment. 801 F.3d 369, 372–73 (3d Cir. 2015).

binding, and to require payment within 30 days. 29 U.S.C. § 1185e(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6).

Those requirements are not external to ERISA plans. They govern what covered plans must provide and how covered benefits must be paid. ERISA requires fiduciaries to administer plans "in accordance with the documents and instruments governing the plan" only insofar as those documents are "consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(D). This Court applies that rule as written. A plan is enforced as written unless ERISA contains a contrary directive. *Bauer v. Summit Bancorp*, 325 F.3d 155, 160 (3d Cir. 2003). Here, ERISA itself contains the directive. For the self-funded ERISA-plan claims alleged here, whatever a particular plan may otherwise say about out-of-network reimbursement, ERISA's surprise-billing provisions require payment of the out-of-network rate determined through the NSA's IDR process. 29 U.S.C. § 1185e(c)(5)(E)(i)(I), (c)(6).

The Supreme Court's decision in *Cent. Laborers' Pension Fund v. Heinz* confirms that ERISA's substantive benefit rules operate as mandatory plan terms. 541 U.S. 739 (2004). There, the Court described ERISA's vesting command, which provides that each plan "shall provide" that benefits are nonforfeitable, as a "global directive that regulates the substantive content of pension plans" and "adds a mandatory term to all retirement packages[.]" *Id.* at 750. The same principle applies here. ERISA's NSA amendments regulate the substantive content of covered health

plans by requiring coverage and payment for specified out-of-network services and by fixing the payment amount through binding IDR awards when the parties cannot agree. 29 U.S.C. § 1185e(a)(1)(C)(iv), (b)(1)(D), (c)(5)(A), (c)(5)(E)(i), (c)(6).

Courts have applied the same principle in § 502(a)(1)(B) benefits cases. In *N.R. ex rel. S.R. v. Raytheon Co.*, the First Circuit allowed a participant to proceed under § 502(a)(1)(B) where a plan term allegedly conflicted with ERISA's mental-health-parity requirements. 24 F.4th 740, 752 (1st Cir. 2022). The participant's claim was still a claim for benefits due under the plan because ERISA itself displaced the inconsistent plan term. *Id.* Similarly, in *Open MRI*, the District of New Jersey held that federal COVID-testing coverage mandates raised the statutory obligation to the status of a plan benefit enforceable by an assignee-provider under § 502(a)(1)(B). *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*, No. CV 20-10345 (KM) (ESK), 2022 WL 1567797, at *6 (D.N.J. May 18, 2022).

The same analysis applies here. The NSA's ERISA amendments do not create a payment obligation untethered from ERISA plans. They impose mandatory coverage and reimbursement rules on ERISA plans. *See* 29 U.S.C. § 1185e. Those rules identify what the plan must cover, who must be paid, how the out-of-network rate is determined, and when payment must be made. *Id.* at §§ 1185e(a)(1)(C)(iv)(II), (b)(1)(D), (c)(5)(E)(i)(I), (c)(6). When Cigna and UMR, or the ERISA plans they

insure or administer, failed to pay the IDR-awarded amounts for ERISA-plan claims, they failed to pay benefits due under the plans as modified by federal law.

The District of Connecticut reached that conclusion in *Guardian Flight v. Aetna*. The court rejected the argument that the right to payment stemmed only from the NSA and not from ERISA plan rights. 789 F. Supp. 3d at 233–34. The NSA amended ERISA and created coverage and reimbursement obligations that apply to ERISA health plans. *Id.* Plan participants and beneficiaries may enforce those rights under ERISA § 502(a)(1)(B). *Id.* That reasoning is correct. ERISA's surprise-billing provisions are part of the legal framework governing the plans, and § 502(a)(1)(B) supplies the cause of action for denied benefits.

At the pleading stage, SpecialtyCare alleged enough. It alleged covered services, ERISA-governed plans, valid assignments, binding IDR awards, and nonpayment. A-042–043, 047–048 (Cigna D.I. 1 ¶¶ 13–16, 21–22, 49–56); A-341–343, 346–347 (UMR D.I. 1 ¶¶ 13–16, 21–22, 49–56). The NSA's ERISA amendments identify the benefit owed for ERISA-plan claims. Section 502(a)(1)(B) permits recovery of that benefit. The district court erred by dismissing Count IV.

## IV. The Delaware Claims Should Be Reinstated If Any Federal Claim Is Reinstated.

The district court did not reach the Delaware claims on the merits. It declined supplemental jurisdiction only after dismissing every federal claim. A-017–018 (Cigna D.I. 26, pp. 13–14); A-036–037 (UMR D.I. 24, pp. 13–14). That ruling was

derivative of the federal dismissals. Under 28 U.S.C. § 1367(c)(3), a district court may decline supplemental jurisdiction after dismissing all claims supporting original jurisdiction. If this Court reinstates any federal claim, the premise for declining supplemental jurisdiction disappears. Counts V, VI, and VII should therefore be reinstated and remanded for consideration in the first instance.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's dismissal of SpecialtyCare's claims and remand both cases for further proceedings.

Dated: June 15, 2026.

Respectfully submitted,

**POLSINELLI PC**

/s/ *Joshua D. Arters*
Joshua D. Arters (TN #31340)
Kevin T. Elkins (TN #33280)
501 Commerce St., Suite 1300
Nashville, Tennessee 37203
Tel. (615) 252-3923
jarters@polsinelli.com
kelkins@polsinelli.com

*Attorneys for Plaintiffs-Appelants*

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I, Joshua D. Arters, certify as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 15, 2026

/s/ *Joshua D. Arters*
Joshua D. Arters

# CERTIFICATION OF BAR MEMBERSHIP

I, Kevin T. Elkins, certify as follows:

1.    I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 15, 2026

/s/ *Kevin T. Elkins*
Kevin T. Elkins

## **CERTIFICATION OF WORD COUNT**

Pursuant to Fed. R. App. P. 32(g), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 12,948 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 365 version of Microsoft Word in 14-point Times New Roman font.

Dated: June 15, 2026

/s/ *Joshua D. Arters*
Joshua D. Arters

62

## CERTIFICATION THAT E-BRIEF AND HARD COPY ARE IDENTICAL

Pursuant to Local Rule 31.1(c), I certify the following:

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies.

Dated: June 15, 2026

/s/ *Joshua D. Arters*
Joshua D. Arters

## **CERTIFICATION THAT E-BRIEF HAS BEEN VIRUS CHECKED**

Pursuant to Local Rule 31.1(c), I certify the following:

The file containing the electronic version of this brief has been run through

the CrowdStrike Sandbox Environment and no viruses have been detected.

Dated: June 15, 2026

/s/ *Joshua D. Arters*
Joshua D. Arters

## **CERTIFICATION OF SERVICE**

I hereby certify that, on June 15, 2026, a copy of the foregoing Brief and Appendix for Appellants Volume 1 was filed electronically with the Clerk of the Court using the CM/ECF system, which will serve by email counsel of record for all parties. I certify that all participants in the case are registered CM/ECF users.

/s/ *Joshua D. Arters*
Joshua D. Arters

# APPENDIX

**TABLE OF CONTENTS**

**Page**

**Volume I:**

1:24-cv-1378: Plaintiff's Notice of Appeal [D.I. 30]
        filed April 03, 2026.....................................................................................A-001

1:24-cv-1378: Memorandum Order [D.I. 29]
        filed March 26, 2026...................................................................................A-003

1:24-cv-1378: Report and Recommendation [D.I. 26]
        filed February 20, 2026..............................................................................A-005

1:24-cv-1396: Notice of Appeal [D.I. 28]
        filed Apil 03, 2026.....................................................................................A-020

1:24-cv-1396: Memorandum Order [D.I. 27]
        filed March 26, 2026...................................................................................A-022

1:24-cv-1396: Report and Recommendation [D.I. 24]
        filed February 20, 2026..............................................................................A-024

**Volume II:**

1:24-cv-1378: Complaint and Petition to Confirm Arbitration Award [D.I. 1]
        Filed December 16, 2024............................................................................A-039

1:24-cv-1378: Exhibit A [D.I. 1-1]
        Filed December 16, 2024............................................................................A-052

1:24-cv-1378: Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) [D.I. 15]
        Filed March 24, 2025.................................................................................A-072

1:24-cv-1378: Defendant's Opening Brief in Support of Motion to Dismiss [D.I. 16]
        Filed March 24, 2025.................................................................................A-075

1:24-cv-1378: Plaintiff's Response in Opposition to Defendant's Motion to Dismiss [D.I. 18]
        Filed April 21, 2025...................................................................................A-106

1:24-cv-1378: Exhibit A [D.I. 18-1]
        Filed April 21, 2025...................................................................................A-133

1:24-cv-1378: Defendant's Reply Brief in Further Support of Motion to Dismiss [D.I. 19]
        Filed May 05, 2025....................................................................................A-182

1:24-cv-1378: Plaintiff's Notice of Supplemental Authority [D.I. 20]
        Filed May 16, 2025....................................................................................A-199

1:24-cv-1378: Notice of Supplemental Authority [D.I. 21]
        Filed June 13, 2025....................................................................................A-241

1:24-cv-1378: Exhibit A to [D.I. 21]
    Filed June 13, 2025....................................................................................A-243

1:24-cv-1378: Notice of Supplemental Authority [D.I. 23]
    Filed November 04, 2025 ..........................................................................A-251

1:24-cv-1378: Exhibit A [D.I. 23-1]
    Filed November 04, 2025 ..........................................................................A-253

1:24-cv-1378: Notice of Supplemental Authority [D.I. 24]
    Filed December 19, 2025............................................................................A-281

1:24-cv-1378: Notice of Supplemental Authority [D.I. 25]
    Filed February 19, 2026.............................................................................A-284

1:24-cv-1378: Exhibit A [D.I. 25-1]
    Filed February 19, 2026.............................................................................A-286

1:24-cv-1378: Exhibit B [D.I. 25-2]
    Filed February 19, 2026.............................................................................A-294

1:24-cv-1378: Plaintiffs' Objections to Magistrate Judge's Report and Recommendation
    Granting Defendant's Motion to Dismiss [D.I. 27].................................A-310

1:24-cv-1378: Defendant's Response to Plaintiffs' Objections to Magistrate Judge's
    Report and Recommendation Granting Defendant's Motion to Dismiss
    Filed March 20, 2026 [D.I. 28]..................................................................A-325

1:24-cv-1396: Complaint and Petition to Confirm Arbitration Award [D.I. 1]
    Filed December 20, 2024............................................................................A-338

1:24-cv-1396: Exhibit A [D.I. 1-1]
    Filed December 20, 2024............................................................................A-351

1:24-cv-1396: UMR, Inc.'s Motion to Dismiss [D.I. 16]
    Filed August 29, 2025 ...............................................................................A-360

1:24-cv-1396: Proposed Order [D.I. 16-1]
    Filed August 29, 2025 ...............................................................................A-361

1:24-cv-1396: UMR, Inc.'s Opening Brief in Support of its Motion to Dismiss [D.I. 17]
    Filed August 29, 2025 ...............................................................................A-362

1:24-cv-1396: Exhibit A [D.I. 17-1]
    Filed August 29, 2025 ...............................................................................A-387

1:24-cv-1396: Plaintiffs' Answering Brief in Opposition to Defendant's Motion to Dismiss [D.I.
    19] Filed September 26, 2025.....................................................................A-414

1:24-cv-1396: UMR, Inc.'s Reply Brief in Further Support of its Motion to Dismiss [D.I. 21]
    Filed October 17, 2025 ..............................................................................A-443

1:24-cv-1396: Notice of Supplemental Authority [D.I. 22]
Filed November 06, 2025 ...................................................................................A-458

1:24-cv-1396: Exhibit A [D.I. 22-1]
Filed November 06, 2025 ...................................................................................A-460

1:24-cv-1396: Second Notice of Supplemental Authority [D.I. 23]
Filed December 08, 2025...................................................................................A-473

1:24-cv-1396: Exhibit A [D.I. 23-1]
Filed December 08, 2025...................................................................................A-475

1:24-cv-1396: Exhibit B – [D.I. 23-2]
Filed December 08, 2025...................................................................................A-483

1:24-cv-1396: Plaintiffs' Objections to Magistrate Judge's Report and Recommendation
Granting Defendant's Motion to Dismiss [D.I. 25]
Filed March 06, 2026...........................................................................................A-491

1:24-cv-1396: Certificate of Compliance [D.I. 25-1]
Filed March 06, 2026...........................................................................................A-506

1:24-cv-1396: UMR, Inc.'s Opposition to Objections to Magistrate Judge's
Report and Recommendation Granting Motion to Dismiss [D.I. 26]
Filed March 19, 2026...........................................................................................A-507

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC, <br><br> Plaintiffs, <br><br> v. <br><br> CIGNA HEALTHCARE, INC., <br><br> Defendant. | C.A. No. 24-1378-RGA |

**PLAINTIFFS' NOTICE OF APPEAL**

Plaintiffs SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively "SpecialtyCare"), appeal to the United States Court of Appeals for the Third Circuit from all orders and decisions, including without limitation the Order adopting the Report and Recommendation (D.I. 26) and granting Defendant's motion to dismiss rendered on March 26, 2026 (D.I. 29).

110017259.2

**A-001**

Dated: April 3, 2026

Respectfully submitted,

**POLSINELLI PC**

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Tel. (302) 252-0920
skraftschik@polsinelli.com

Joshua D. Arters (admitted *pro hac vice*)
Kevin T. Elkins (admitted *pro hac vice*)
501 Commerce St., Suite 1300
Nashville, Tennessee 37203
Tel. (615) 252-3923
jarters@polsinelli.com
kelkins@polsinelli.com

*Attorneys for Plaintiffs*

110017259.2

**A-002**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA HEALTHCARE, INC.,<br><br>Defendant. | Civil Action No. 24-1378-RGA |

MEMORANDUM ORDER

WHEREAS, the Magistrate Judge issued an R&R (D.I. 26) recommending that I grant Defendant's motion to dismiss the complaint (D.I. 15) in this case;

WHEREAS, I have considered de novo the R&R, Plaintiffs' objections to the R&R (D.I. 27) and Defendant's response to the objections (D.I. 28);

WHEREAS, I agree with the R&R, the Court of Appeals for the Fifth Circuit,[1] and the numerous district courts[2] that have held that there is no private right of action to enforce the payment of an IDR determination, and thus that Counts I, II, and III should be dismissed for failure to state a claim;

---

[1] *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 277 (5th Cir. 2025).
[2] *See* R&R, D.I. 26 at 7 n. 3 & 10 n. 6 (collecting cases). *See also Specialty Care Inc. v. Meritain Health, Inc.*, C.A. No. 25-198-MN, D.I. 42 (D. Del. Mar. 17, 2026).

Page 1 of 2

**A-003**

WHEREAS, I agree with the R&R and the Court of Appeals for the Fifth Circuit[3] that Plaintiffs do not have standing, for lack of a concrete injury, to sue under ERISA, and thus that Count IV should be dismissed for lack of standing;

WHEREAS, I agree with the R&R that I should not exercise supplemental jurisdiction over the state law claims, and thus that Counts V, VI, and VII should be dismissed;

NOW THEREFORE, I OVERRULE the objections, ADOPT the R&R (D.I. 26), and GRANT the motion to dismiss (D.I. 15); and

Counts I, II, and III are DISMISSED with prejudice and Counts IV, V, VI, and VII are DISMISSED without prejudice.

IT IS SO ORDERED this 26ᵗʰ day of March 2026.

_____
United States District Judge

---

[3] *Guardian Flight*, 140 F.4th at 278. I note that, despite the R&R's reliance on *Guardian* in connection with the ERISA recommendation, Plaintiffs do not mention the case in their objections to that recommendation. (D.I. 27 at 8-10).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-1378-RGA |
| | ) | |
| CIGNA HEALTHCARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendant CIGNA Healthcare, Inc. ("Defendant" or "Cigna") to dismiss all counts of the Complaint. (D.I. 15). For the reasons set forth below, the Court recommends that Cigna's motion be GRANTED.

I.    **BACKGROUND**

The No Surprises Act is a federal law designed to protect individuals from the cost of healthcare services rendered by unexpected out-of-network providers. *See* 42 U.S.C. § 300gg-111 *et seq.* In particular, where an individual patient unknowingly receives care from an out-of-network provider in certain emergency or non-emergency situations, the No Surprises Act prohibits that provider from billing the patient the difference between the in-network coverage amount and the provider's out-of-network charges.[1] *Id.* §§ 300gg-111(a) & 300gg-111(b). The patient is not required to pay the excess charges, and the provider must instead seek further payment from the patient's health insurance company. *Id.* §§ 300gg-111(a) & 300gg-111(b). Under the No Surprises Act, the out-of-network provider can dispute the amounts paid by the

---

[1]    This practice is referred to as "balance billing."

**A-005**

insurer through an independent dispute resolution ("IDR") process, whereby the parties submit their proposals for the proper payment amount to a neutral entity. *Id.* § 300gg-111(c). From the proposals, the neutral entity selects the amount that the out-of-network provider is to be paid. *Id.* § 300gg-111(c)(5). The IDR determination is final and binding, and payment of the amount therein must be made within thirty days. *Id.* §§ 300gg-111(c)(5)(E)(i)(I) & 300gg-111(c)(6). This case arises from Cigna's alleged failure to pay certain amounts due under IDR determinations rendered under the No Surprises Act.

Plaintiffs SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC (collectively, "Plaintiffs" or "SpecialtyCare") are healthcare providers operating in the United States. (D.I. 1 ¶ 3). According to the Complaint, SpecialtyCare provided out-of-network services to Cigna members or patients who receive their health insurance from self-funded plans under the Employee Retirement Income Security Act ("ERISA") for whom Cigna provides administrative services (collectively, "Cigna members or insureds"). (*Id.* ¶¶ 3, 13). SpecialtyCare billed Cigna directly for the out-of-network healthcare services provided to Cigna members and insureds, but Cigna either failed to pay or paid less than the full billed amount. (*Id.* ¶¶ 13, 14 & 16; *see also* D.I. 1, Ex. A).

Pursuant to the No Surprises Act, the parties proceeded to negotiate payment. (D.I. 1 ¶ 16). After the parties failed to reach an agreement within the statutory negotiation period, SpecialtyCare initiated IDR proceedings. (*Id.*). According to the Complaint, SpecialtyCare obtained 789 IDR determinations in its favor, amounting to a combined $1,360,403 in unpaid fees. (D.I. 1, Ex. A). Despite the statutory mandate that the IDR determinations "shall be binding" and that payment "shall be made" to the healthcare provider within thirty days, Cigna "consistently failed to make timely payment." (D.I. 1 ¶ 23). SpecialtyCare "diligently followed-up with Cigna through

2

**A-006**

multiple avenues," but Cigna has not paid the amounts due under the IDR decisions. (*Id.* ¶¶ 24-27).

On December 16, 2024, SpecialtyCare filed this case against Cigna, asserting claims for confirmation of arbitration awards, non-payment of arbitration awards, improper denial of benefits, open account, bad faith and unjust enrichment. (D.I. 1). On March 24, 2025, Cigna filed the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims for confirmation of arbitration award under the Federal Arbitration Act ("FAA") (Count I), non-payment of IDR determinations in violation of the No Surprises Act (Count II) and implied right of action under the No Surprises Act (Count III) should be dismissed because there is no private right of action under the statute. (*See* D.I. 15 & 16). Cigna also seeks dismissal of SpecialtyCare's ERISA claim (Count IV) and the state-law open account (Count V), bad faith (Count VI) and unjust enrichment (Count VII) claims. Briefing was complete on May 5, 2025. (D.I. 18 & 19).

## II.    LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

**III.    DISCUSSION**

Cigna seeks to dismiss the claims of confirmation of arbitration award under the FAA (Count I), non-payment of IDR determination in violation of the No Surprises Act (Count II) and the implied right of action under the No Surprises Act (Count III) on the basis that there is no private right of action under the statute.  (D.I. 16 at 3-12; D.I. 19 at 1-5).  Cigna also seeks dismissal of the ERISA claim (Count IV) for lack of standing and failure to state a claim, as well as dismissal of the state-law claims (Counts V, VI and VII) as preempted by ERISA and for failure to state a claim.  (D.I. 16 at 12-20; D.I. 19 at 5-10).  The Court begins with the claims under the FAA and No Surprises Act.

**A.    Count I (Petition to Confirm Arbitration Awards Under Section 9 of FAA)**

In Count I, SpecialtyCare seeks to invoke Section 9 of the FAA to confirm various IDR determinations made under the No Surprises Act.  (D.I. 1 ¶¶ 33-37).  Cigna argues that Count I should be dismissed because the No Surprises Act does not permit federal courts to confirm IDR determinations under Section 9 of the FAA.  (*See* D.I. 16 at 3-7; D.I. 19 at 1-4).  Relying upon two district court decisions, SpecialtyCare insists that the No Surprises Act does, in fact, permit federal courts to confirm IDR determinations under this section of the FAA.  (D.I. 18 at 4-8 (citing *GPS*

4

**A-008**

*of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. CV 22-6614 (KM) (JBC), 2023 WL 5815821 (D.N.J. Sept. 8, 2023) and *Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68 (D.D.C. 2002)). The Court agrees with Cigna.

Two provisions of the FAA are relevant to judicial action on arbitral awards. First, Section 9 of the FAA "empowers courts to confirm or enforce arbitration awards." *Guardian Flight, LLC v. Health Care Serv. Corp.*, 140 F.4th 271, 276 (5th Cir. 2025); *see also* 9 U.S.C. § 9. Second, Section 10 of the FAA "allows a court to vacate an arbitral award" in limited instances, such as where the award was procured by corruption, fraud or undue means. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011); 9 U.S.C. § 10; *see also* 9 U.S.C. § 11 (providing grounds to modify or correct arbitration awards). Neither side here seeks vacatur of the relevant IDR determinations under Section 10. Instead, SpecialtyCare seeks a court order enforcing the IDR determinations pursuant to Section 9, and the question is whether the No Suprises Act permits such relief under Section 9 of the FAA.

The No Surprises Act provides that IDR determinations "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9." 42 U.S.C. § 300gg-111(c)(5)(E). In other words, the No Surprises Act expressly prohibits judicial review of IDR determinations except where vacatur is sought pursuant to Section 10 of the FAA. In the Court's view, Congress's decision to incorporate only Section 10 of the FAA into the No Surprises Act "indicates that Congress deliberately left out" Section 9. *See Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 470 (3d Cir. 1994). Addressing this precise issue last year, the Fifth Circuit noted the same thing – the inclusion of Section 10 but omission of Section 9 in the No Surprises Act was a meaningful difference intended to have consequence. *See Guardian Flight*, 140 F.4th at 276 ("Section 9 of the FAA empowers courts to confirm or enforce arbitration awards,

5

**A-009**

but Congress chose not to incorporate § 9 into the NSA.  It incorporated only parts of § 10.  By contrast, in other statutes, Congress **has** incorporated § 9 to create a private right of action.  *See* 5 U.S.C. § 580(c).  So, Congress knew how to create a private right of action in the [No Surprises Act] – and has done so elsewhere – but declined to do so." (cleaned up)).  The No Surprises Act does not contemplate enforcement of IDR determinations through Section 9 of the FAA.

SpecialtyCare argues that confirmation of IDR determinations constitutes "judicial enforcement" as opposed to prohibited "judicial review" under the No Surprises Act.  (*See* D.I. 18 at 4-5).  That is a "distinction without difference."  *Guardian Flight*, 140 F.4th at 275 (rejecting identical argument because "[t]he term 'judicial review' is broad enough to include a court's order to enforce an IDR award").  And SpecialtyCare's reliance on *GPS* ignores the actual basis for jurisdiction in that case.  (D.I. 18 at 5-6).  Although the *GPS* court did enforce the IDR determination, the court "only had jurisdiction to confirm the award because the [plaintiff] attempted to vacate" the IDR determination under Section 10 of the FAA, thereby permitting "judicial review" under the No Surprises Act.  *Mod. Orthopaedics of NJ v. Premera Blue Cross*, No. 2:25-CV-01087 (BRM) (JSA), 2025 WL 3063648, at *13 (D.N.J. Nov. 3, 2025) (distinguishing *GPS*); *see also SpecialtyCare Inc. v. Meritain Health, Inc.*, C.A. No. 25-198-MN, 2026 WL 353259, at *4 (D. Del. Feb. 9, 2026) (same); *T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Ass'n*, No. 25-CV-1255 (CS), 2025 WL 3496382, at *6 (S.D.N.Y. Dec. 5, 2025) (same); *Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-CV-20428, 2025 WL 742761, at *3 n.2 (S.D. Fla. Mar. 9, 2025) (same); *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076,

6

**A-010**

1083-084 (M.D. Fla. 2023) (same).  Here, neither side seeks vacatur of the IDR determinations pursuant to Section 10 of the FAA and, as such, *GPS* is inapplicable.[2]

Ultimately, the Court agrees with the many other district courts that have concluded IDR determinations under the No Surprises Act cannot be enforced pursuant to Section 9 of the FAA.[3] The Court therefore recommends that Count I be dismissed.

---

[2]    Similarly, SpecialtyCare's reliance on *Cheminova* is unavailing because that case involved a different statute (Federal Insecticide Fungicide and Rodenticide Act), and the court never analyzed whether Section 9 of the FAA could be used to enforce the arbitration awards contemplated by the statute.  *Cheminova*, 182 F. Supp. 2d at 73-77.  Instead, the court applied already existing arbitration law without specifically addressing the applicability of certain provisions of the FAA.  *See id.*; *see also Worldwide Aircraft Servs., Inc. v. United Healthcare*, No. 8:24-CV-2527-TPB-LSG, 2025 WL 3312169, at *2 (M.D. Fla. Nov. 28, 2025) (distinguishing *Cheminova*); *Med-Trans Corp.*, 700 F. Supp. 3d at 1084 (same).

[3]    *SpecialtyCare Inc. v. Aetna, Inc.*, No. 1:25-CV-224, 2025 WL 3719227, at *2-3 (M.D. Pa. Dec. 23, 2025); *N. Jersey Neurosurgical Assocs. PA. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-12593 (SDW) (MAH), 2025 U.S. Dist. LEXIS 261572, at *1-2 (D.N.J. Dec. 18, 2025); *Neuromon Pros. LLC v. Aetna Life Ins. Co.*, No. 25-1701 (SDW) (JSA), 2025 U.S. Dist. LEXIS 261584 (D.N.J. Dec. 18, 2025); *Savalia v. Blue Shield of Cal. Life & Health Ins. Co.*, No. 8:25-cv-02031, 2025 U.S. Dist. LEXIS 261150, at *16 (C.D. Cal. Dec. 16, 2025); *Mitchell F. Reiter MD PC v. Horizon Blue Cross Blue Shield of New Jersey*, No. 2:25-CV-12526 (WJM), 2025 WL 3514300, at *3-5 (D.N.J. Dec. 8, 2025); *T.V. Seshan*, 2025 WL 3496382, at *4-7; *Spiel, MD, PA v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-14769 (SRC), 2025 WL 3459719, at *4-6 (D.N.J. Dec. 2, 2025); *Tamagnini v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-02022 (SRC), 2025 WL 3459708, at *4-6 (D.N.J. Dec. 2, 2025); *Complete Med. Wellness LLC v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-04177 (SRC), 2025 WL 3443620, at *4-6 (D.N.J. Dec. 1, 2025); *Garden State Pain Mgmt. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-05679 (SRC), 2025 WL 3443243, at *4-6 (D.N.J. Dec. 1, 2025); *Ne. Neurosurgical Assocs. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-06288 (SRC), 2025 WL 3282210, at *4-6 (D.N.J. Nov. 25, 2025); *Freeman Pain Inst. P.A. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-02507 (SRC), 2025 WL 3268289, at *4-6 (D.N.J. Nov. 24, 2025); *PHI Health, LLC v. Keating Auto Grp. Emp. Ben. Plan Tr.*, No. 4:24-cv-2832, 2025 WL 3618198, at *3-4 (S.D. Tex. Nov. 4, 2025), *report and recommendation adopted sub nom. PHI Health, LLC v. Entrust, LLC*, No. CV H-24-2832, 2025 WL 3617339 (S.D. Tex. Dec. 11, 2025); *Mod. Orthopaedics*, 2025 WL 3063648, at *5-7; *Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, 790 F. Supp. 3d 129, 136-38 (E.D.N.Y. 2025).

**B.      Count II (Action for Non-Payment Under the No Surprises Act) and Count III (Implied Right of Action Under the No Surprises Act)**

Counts II and III seek payment of amounts due under the IDR determinations and are premised solely on violations of the No Surprises Act.  (D.I. 1 ¶¶ 38-47).  Cigna argues that Counts II and III must be dismissed because the statute creates neither an express nor implied private right of action.  (D.I. 16 at 8-12; D.I. 19 at 4-5).  The Court agrees.

As an initial matter, there is no express private right of action to confirm IDR determinations under the No Surprises Act.  *See Guardian Flight*, 140 F.4th at 275 ("[T]he NSA contains no express right of action to enforce or confirm an IDR award.").  SpecialtyCare does not contend otherwise.  (D.I. 18 at 9-12).  Instead, SpecialtyCare appears to argue that the No Surprises Act creates an implied private right of action based on its provision that IDR determinations "shall be binding" and that payments pursuant to IDR determinations "shall be made" within thirty days.  (*Id*. (quoting 42 U.S.C. §§ 300gg-111(c)(5)(E)(i)(I) & 300gg-112(b)(6) and relying upon *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 301 (2020))).

In determining whether a private right of action exists under a federal statute, courts in the Third Circuit evaluate "(1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff."  *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) and *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004)).  A plaintiff must demonstrate both elements are satisfied for a court to conclude that a federal statute creates an implied private right of action.  *McGovern*, 554 F.3d at 116.

As to the first prong, the Court concludes that the "shall be binding" and "shall be made" language of the No Surprises Act creates a personal right for SpecialtyCare.  *See Mod. Orthopaedics*, 2025 WL 3063648, at *8-9 ("There is no plausible argument that Congress intended

8

**A-012**

to allow insurers like [defendant] to simply ignore the 'binding' outcomes of the IDR. [Plaintiff] has a right to be paid. The question is whether the Court may properly enforce this right." (citation omitted)).

As to the second prong, however, the "robust system of administrative enforcement" provided by the No Surprises Act creates a "strong presumption" that Congress did not intend to create a personal remedy for SpecialtyCare. *See id.* at *9; *see also Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 (3d Cir. 2007). Indeed, Congress empowered the Department of Health and Human Services ("HHS") – not the courts – to "assess penalties against insurers for failure to comply" with the statute. *Guardian Flight*, 140 F.4th at 277 (discussing 42 U.S.C. § 300gg-22(b)(2)(A)); *see also Mod. Orthopaedics*, 2025 WL 3063648, at *9-10 ("[T]he primary enforcement authority for the [No Surprises Act] lies with *state* administrative agencies. . . . However, in the event a State is unable, or unwilling, to enforce compliance with any part of the [No Surprises Act], the HHS may assume primary responsibility for enforcing the [No Surprises Act]."). That the No Surprises Act provides for state and HHS enforcement – while expressly prohibiting judicial review beyond petitions to vacate IDR determinations – demonstrates that SpecialtyCare has no personal remedy under the statute.[4] *See Guardian Flight*, 140 F.4th at 276 ("We will not find an implied right of action where Congress expressly forecloses it.").

Although the Third Circuit has not ruled on this particular issue, the Fifth Circuit has in the recent *Guardian Flight* decision. There, the plaintiff healthcare providers sued the defendant insurer for failure to timely pay IDR determination awards pursuant to the No Surprises Act,

---

[4]   SpecialtyCare's reliance on *Maine Community Health Options v. United States*, 590 U.S. 296 (2020), is misplaced. (*See* D.I. 18 at 10). There, the statute at issue (Risk Corridors program of the Affordable Care Act) did not provide a similar enforcement mechanism for a plaintiff or include the same prohibition of judicial review. *Maine*, 590 U.S. at 309-11.

similarly asserting claims under the statute (and ERISA). *See Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp. 3d 742, 748 (N.D. Tex. 2024). The district court dismissed all of plaintiffs' claims. *Id.* at 755. On appeal, the Fifth Circuit affirmed the dismissal, finding that the No Surprises Act does not provide an express or implied private right of action to confirm IDR determinations. *Guardian Flight*, 140 F.4th at 274-77.[5] This Court ultimately finds persuasive and agrees with the Fifth Circuit and the vast majority of district courts that the No Surprises Act does not permit judicial enforcement of IDR determinations.[6]

The Court is aware that at least one district court has found that IDR determinations under the No Surprises Act can be enforced through the courts. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214 (D. Conn. 2025) ("*Aetna*"). In reaching that conclusion, the *Aetna* court reasoned that, without judicial confirmation, "IDR determinations would be effectively unenforceable." *Id.* at 228. But that rationale ignores the enforcement mechanisms expressly provided by the No Surprises Act. *See, e.g.*, 42 U.S.C. § 300gg-22; *see also Mod. Orthopaedics*, 2025 WL 3063648, at *9-10; *see also Guardian Flight*, 140 F.4th at 277 (summarizing

---

[5]    The Supreme Court recently denied certiorari. *See* No. 25-441, 2026 WL 79855 (U.S. Jan. 12, 2026).

[6]    *See Guardian Flight*, 140 F.4th at 274-77; *Meritain Health*, 2026 WL 353259, at *3-4; *SpecialtyCare*, 2025 WL 3719227, at *2-3; *N. Jersey Neurosurgical Assocs.*, 2025 U.S. Dist. LEXIS 261572, at *1-2; *Neuromon*, 2025 U.S. Dist. LEXIS 261584; *Savalia*, 2025 U.S. Dist. LEXIS 261150, at *16; *Worldwide Aircraft Servs. Inc. v. Freedom Life Ins. Co. of Am.*, No. 8:25-cv-01158-WFJ-AEP, 2025 WL 3551397, at *2-3 (M.D. Fla. Dec. 11, 2025); *Reiter*, 2025 WL 3514300, at *3-5; *T.V. Seshan*, 2025 WL 3496382, at *7-9; *Spiel*, 2025 WL 3459719, at *6-8; *Tamagnini*, 2025 WL 3459708, at *6-7; *Complete Med. Wellness*, 2025 WL 3443620, at *6-8; *Garden State Pain Mgmt.*, 2025 WL 3443243, at *6-8; *Worldwide Aircraft*, 2025 WL 3312169, at *1-2; *Ne. Neurosurgical Assocs.*, 2025 WL 3282210, at *6-8; *Freeman*, 2025 WL 3268289, at *6-8; *PHI Health*, 2025 WL 3618198, at *2-3; *Mod. Orthopaedics*, 2025 WL 3063648, at *7-14; *Farkas*, 790 F. Supp. 3d at 136-38.

administrative remedies offered by No Surprises Act to enforce IDR determinations).[7]  Moreover, *Aetna* apparently "stands alone." *Meritain Health*, 2026 WL 353259, at \*4; *see also Guardian Flight*, 140 F.4th at 276 n.5 (Fifth Circuit disagreeing with *Aetna* based on the "plain text and structure" of the No Surprises Act).

The overwhelming weight of authority to address this issue has concluded that out-of-network providers cannot turn to the courts to enforce IDR determinations rendered under the No Surprises Act.  Even if SpecialtyCare would prefer a different mechanism, "the wisdom of Congress's policy choice is beyond our judicial ken." *Guardian Flight*, 140 F.4th at 277.  Because the No Surprises Act does not create an express or implied private right of action to enforce IDR determinations, the Court recommends that Counts II and III be dismissed.

### C.    Count IV (Improper Denial of Benefits Under ERISA)

In Count IV, SpecialtyCare alleges that it has been assigned the right to benefits (and payments) by Cigna's members and insureds and, as such, the amounts due under the IDR determinations are owed to SpecialtyCare as an ERISA beneficiary.  (D.I. 1 ¶¶ 48-56).  Cigna argues that SpecialtyCare's ERISA claim should be dismissed because the Complaint fails to plausibly allege that SpecialtyCare was assigned benefits under the plans and that, even if plausibly alleged, SpecialtyCare does not have derivative standing because the plan beneficiaries did not suffer any concrete injury.  (D.I. 16 at 12-16; D.I. 19 at 5-7).  In SpecialtyCare's view, the Complaint contains sufficient factual allegations that benefits were assigned to SpecialtyCare and

---

[7]    Acknowledging the "conflict" between its decision and the Fifth Circuit's, the District of Connecticut has recently noted that "[i]t is possible I would have reached a different conclusion" had 42 U.S.C. § 300gg-22 been briefed. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 3:24-cv-00680-MPS, D.I. 295 (D. Conn. Sept. 30, 2025).  Notably, no federal court has followed the District of Connecticut in finding jurisdiction to enforce IDR determinations where no party seeks vacatur.

that Cigna's non-payment "give[s] rise to a wrongful denial of benefits claim" under ERISA. (D.I. 18 at 12-16).  The Court ultimately agrees with Cigna that SpecialtyCare lacks standing to sue under ERISA for failure to pay the amounts due under the IDR determinations.

Healthcare providers "may obtain standing to sue" under ERISA "by assignment from a plan participant." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).  But the plan participants must have suffered a concrete injury for the provider to have standing as assignee.  *See Guardian Flight*, 140 F.4th at 278; *see also Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor."); *CardioNet*, 751 F.3d at 178 ("It is a basic principle of assignment law that an assignee's rights derive from the assignor.").  By design, the No Surprises Act shields plan participants from the out-of-network costs that are the subject of this lawsuit; in other words, the outcome of this dispute will not affect the plan participants in any way.  *See Mod. Orthopaedics*, 2025 WL 3063648, at *8-9 ("The [No Surprises Act] protects patients by relieving them of liability to pay for the procedure beyond their ordinary in-network insurance payments and instead has the provider and the insurer negotiate or dispute the proper payment among themselves.").  The plan participants have no real interest in the outcome of this case.

Because the plan participants lack a "concrete stake in this lawsuit," even as a purported assignee, SpecialtyCare similarly lacks the Article III standing necessary to bring an ERISA claim. *See Guardian Flight*, 140 F.4th at 278 ("[B]ecause the beneficiaries would lack Article III standing if they brought an ERISA claim on their own, Providers lack standing to bring a derivative ERISA claim as their assignees."); *see also Thole v. U. S. Bank N.A*, 590 U.S. 538, 541 (2020) ("If Thole and Smith were to *lose* this lawsuit, they would still receive the exact same monthly benefits that

12

they are already slated to receive, not a penny less.  If Thole and Smith were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more. . . . Because the plaintiffs themselves have no concrete stake in the lawsuit, they lack Article III standing.").  None of the cases cited by SpecialtyCare compel a different result. (*See* D.I. 18 at 12-16).  Even if SpecialtyCare had plausibly alleged that it received assignment of member benefits, such an assignment would not confer Article III standing to sue an insurer for failure to pay amounts due under the IDR determinations.  *See Guardian Flight*, 140 F.4th at 278. The Court therefore recommends that the ERISA claim (Count IV) be dismissed.

### D.     Count V (Open Account), Count VI (Bad Faith) and Count VII (Unjust Enrichment)

In Counts V, VI and VII, SpecialtyCare asserts several causes of action arising under Delaware law.  (D.I. 1 ¶¶ 57-77).  Because SpecialtyCare and Cigna are both Delaware corporations (*id.* ¶¶ 8-9), jurisdiction over the state law claims cannot be based on diversity jurisdiction.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."); *see also* 28 U.S.C. §§ 1332(a)(1) & 1332(c)(1).  Recognizing this, SpecialtyCare alleges that this Court has jurisdiction over the state law claims based on supplemental jurisdiction under 28 U.S.C. § 1367(a).  (D.I. 1 ¶ 10).

Supplemental jurisdiction permits federal courts to adjudicate claims that would otherwise lack federal subject matter jurisdiction.  Specifically, a district court having original jurisdiction in a civil action may exercise such supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367(a).  A district court may decline to exercise supplemental jurisdiction over claims for several reasons, including where "the district court has

13

**A-017**

dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see also Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999).

As set forth above, the Court recommends dismissal of all of SpecialtyCare's federal claims. In such a situation, the exercise of supplemental jurisdiction is not automatic; instead, the Court has discretion to decide whether to exercise such jurisdiction over the state law claims. SpecialtyCare has not raised – and the Court has not identified – any considerations of judicial economy, convenience or fairness to the parties that would justify such exercise. *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). This case is in its infancy; without the federal claims, the state law claims should be dismissed. *See Humana, Inc. v. St. Jude Med., LLC*, C.A. No. 20-1032-SB, 2020 WL 7264161, at *4 (D. Del. Oct. 12, 2020) (Bibas, J., sitting by designation) (after dismissing federal claims, declining to exercise supplemental jurisdiction "[b]ecause this case has just begun [and] there is no good reason to keep the state claims in federal court"). The Court thus recommends that Counts V-VII be dismissed.

IV.    **CONCLUSION**

For the foregoing reasons, the Court recommends that Cigna's motion to dismiss (D.I. 15) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2).

A-019

Any responses to the objections shall be limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: February 20, 2026

_____
UNITED STATES MAGISTRATE JUDGE

15

Case: 26-1768   Document: 20-1   Page: 98   Date Filed: 06/15/2026

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC, <br><br> Plaintiffs, <br><br> v. <br><br> UMR, INC., <br><br> Defendant. | C.A. 24-1396-RGA |

**PLAINTIFFS' NOTICE OF APPEAL**

Plaintiffs SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively "SpecialtyCare"), appeal to the United States Court of Appeals for the Third Circuit from all orders and decisions, including without limitation the Order adopting the Report and Recommendation (D.I. 24) and granting Defendant's motion to dismiss rendered on March 26, 2026 (D.I. 27).

110018112.2

**A-020**

Case: 26-1768   Document: 20-1   Page: 100   Date Filed: 06/15/2026

Case 1:24-cv-01396-RGA   Document 28   Filed 04/03/26   Page 2 of 2 PageID #: 227

A-021

Dated: April 3, 2026

Respectfully submitted,

**POLSINELLI PC**

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Tel. (302) 252-0920
skraftschik@polsinelli.com

Joshua D. Arters (admitted *pro hac vice*)
Kevin T. Elkins (admitted *pro hac vice*)
501 Commerce St., Suite 1300
Nashville, Tennessee 37203
Tel. (615) 252-3923
jarters@polsinelli.com
kelkins@polsinelli.com

*Attorneys for Plaintiffs*

2

110018112.2

**A-021**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC, <br><br> Plaintiffs, <br><br> v. <br><br> UMR, INC., <br><br> Defendant. | Civil Action No. 24-1396-RGA |

MEMORANDUM ORDER

WHEREAS, the Magistrate Judge issued an R&R (D.I. 24) recommending that I grant Defendant's motion to dismiss the complaint (D.I. 16) in this case;

WHEREAS, I have considered de novo the R&R, Plaintiffs' objections to the R&R (D.I. 25) and Defendant's opposition to the objections (D.I. 26);

WHEREAS, I agree with the R&R, the Court of Appeals for the Fifth Circuit,[1] and the numerous district courts[2] that have held that there is no private right of action to enforce the payment of an IDR determination, and thus that Counts I, II, and III should be dismissed for failure to state a claim;

WHEREAS, I agree with the R&R and the Court of Appeals for the Fifth Circuit[3] that Plaintiffs do not have standing, for lack of a concrete injury, to sue under ERISA, and thus that Count IV should be dismissed for lack of standing;

---

[1] *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 277 (5th Cir. 2025).
[2] *See* R&R, D.I. 24 at 7 n. 3 & 10 n. 5 (collecting cases). *See also Specialty Care Inc. v. Meritain Health, Inc.*, C.A. No. 25-198-MN, D.I. 42 (D. Del. Mar. 17, 2026).
[3] *Guardian Flight*, 140 F.4th at 278. I note that in underlying briefing, Defendant asserted that the Court should follow the "persuasive reasoning" of *Guardian*. (D.I. 17 at 14). In response,

WHEREAS, I agree with the R&R that I should not exercise supplemental jurisdiction over the state law claims, and thus that Counts V, VI, and VII should be dismissed;

NOW THEREFORE, I OVERRULE the objections, ADOPT the R&R (D.I. 24), and GRANT the motion to dismiss (D.I. 16); and

Counts I, II, and III are DISMISSED with prejudice and Counts IV, V, VI, and VII are DISMISSED without prejudice.

IT IS SO ORDERED this $\underline{26}^{th}$ day of March 2026.

_____
United States District Judge

---

Plaintiffs did not mention *Guardian* in connection with the ERISA argument. (D.I. 19 at 14-16). Similarly, in their objections, Plaintiffs do not mention *Guardian* in connection with the ERISA objection. (D.I. 25 at 8-10).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-1396-RGA |
| | ) | |
| UMR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendant UMR, Inc. ("Defendant" or "UMR") to dismiss all counts of the Complaint. (D.I. 16). For the reasons set forth below, the Court recommends that UMR's motion be GRANTED.

## I.    BACKGROUND

The No Surprises Act is a federal law designed to protect individuals from the cost of healthcare services rendered by unexpected out-of-network providers. *See* 42 U.S.C. § 300gg-111 *et seq*. In particular, where an individual patient unknowingly receives care from an out-of-network provider in certain emergency or non-emergency situations, the No Surprises Act prohibits that provider from billing the patient the difference between the in-network coverage amount and the provider's out-of-network charges.[1] *Id*. §§ 300gg-111(a) & 300gg-111(b). The patient is not required to pay the excess charges, and the provider must instead seek further payment from the patient's health insurance company. *Id.* §§ 300gg-111(a) & 300gg-111(b). Under the No Surprises Act, the out-of-network provider can dispute the amounts paid by the

---

[1]    This practice is referred to as "balance billing."

**A-024**

insurer through an independent dispute resolution ("IDR") process, whereby the parties submit their proposals for the proper payment amount to a neutral entity. *Id*. § 300gg-111(c). From the proposals, the neutral entity selects the amount that the out-of-network provider is to be paid. *Id*. § 300gg-111(c)(5). The IDR determination is final and binding, and payment of the amount therein must be made within thirty days. *Id*. §§ 300gg-111(c)(5)(E)(i)(I) & 300gg-111(c)(6). This case arises from UMR's alleged failure to pay certain amounts due under IDR determinations rendered under the No Surprises Act.

Plaintiffs SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC (collectively, "Plaintiffs" or "SpecialtyCare") are healthcare providers operating in the United States. (D.I. 1 ¶ 3). According to the Complaint, SpecialtyCare provided out-of-network services to UMR members or patients who receive their health insurance from self-funded plans under the Employee Retirement Income Security Act ("ERISA") for whom UMR provides administrative services (collectively, "UMR members or insureds"). (*Id.* ¶¶ 3, 13). SpecialtyCare billed UMR directly for the out-of-network healthcare services provided to UMR members and insureds, but UMR either failed to pay or paid less than the full billed amount. (*Id.* ¶¶ 13, 14 & 16; *see also* D.I. 1, Ex. A).

Pursuant to the No Surprises Act, the parties proceeded to negotiate payment. (D.I. 1 ¶ 16). After the parties failed to reach an agreement within the statutory negotiation period, SpecialtyCare initiated IDR proceedings. (*Id.*). According to the Complaint, SpecialtyCare obtained 300 IDR determinations in its favor, amounting to a combined $256,427 in unpaid fees. (D.I. 1, Ex. A). Despite the statutory mandate that the IDR determinations "shall be binding" and that payment "shall be made" to the healthcare provider within thirty days, UMR "consistently failed to make

timely payment." (D.I. 1 ¶ 23). SpecialtyCare "diligently followed-up with UMR through multiple avenues," but UMR has not paid the amounts due under the IDR decisions. (*Id.* ¶¶ 24-27).

On December 20, 2024, SpecialtyCare filed this case against UMR, asserting claims for confirmation of arbitration awards, non-payment of arbitration awards, improper denial of benefits, open account, bad faith and unjust enrichment. (D.I. 1). On August 29, 2025, UMR filed the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims for confirmation of arbitration award under the Federal Arbitration Act ("FAA") (Count I), non-payment of IDR determinations in violation of the No Surprises Act (Count II) and implied right of action under the No Surprises Act (Count III) should be dismissed because there is no private right of action under the statute. (D.I. 16 & 17). UMR also seeks dismissal of SpecialtyCare's ERISA claim (Count IV) and the state-law open account (Count V), bad faith (Count VI) and unjust enrichment (Count VII) claims. Briefing was complete on October 17, 2025. (D.I. 19 & 21).

## II.    LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates

a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient

factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In*

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

### III.    DISCUSSION

UMR seeks to dismiss the claims of confirmation of arbitration award under the FAA

(Count I), non-payment of IDR determination in violation of the No Surprises Act (Count II) and

the implied right of action under the No Surprises Act (Count III) on the basis that there is no

private right of action under the statute. (D.I. 17 at 8-13; D.I. 21 at 1-5). UMR also seeks dismissal

of the ERISA claim (Count IV) based on a lack of standing and dismissal of the state-law claims

(Counts V, VI and VII) as preempted by the No Suprises Act and for failure to state a claim.

(D.I. 17 at 13-18; D.I. 21 at 6-10). The Court begins with the claims under the FAA and No

Surprises Act.

### A.    Count I (Petition to Confirm Arbitration Awards Under Section 9 of FAA)

In Count I, SpecialtyCare seeks to invoke Section 9 of the FAA to confirm various IDR

determinations made under the No Surprises Act. (D.I. 1 ¶¶ 33-37). UMR argues that Count I

should be dismissed because the No Surprises Act does not permit federal courts to confirm IDR

determinations under Section 9 of the FAA. (*See* D.I. 17 at 8-13; D.I. 21 at 1-5). Relying upon

several district court decisions, SpecialtyCare insists that the No Surprises Act does, in fact, permit

federal courts to confirm IDR determinations under this section of the FAA. (D.I. 19 at 4-6 (citing *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214 (D. Conn. 2025) and *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. CV 22-6614 (KM) (JBC), 2023 WL 5815821 (D.N.J. Sept. 8, 2023)). The Court agrees with UMR.

Two provisions of the FAA are relevant to judicial action on arbitral awards. First, Section 9 of the FAA "empowers courts to confirm or enforce arbitration awards." *Guardian Flight, LLC v. Health Care Serv. Corp.*, 140 F.4th 271, 276 (5th Cir. 2025); *see also* 9 U.S.C. § 9. Second, Section 10 of the FAA "allows a court to vacate an arbitral award" in limited instances, such as where the award was procured by corruption, fraud or undue means. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011); 9 U.S.C. § 10; *see also* 9 U.S.C. § 11 (providing grounds to modify or correct arbitration awards). Neither side here seeks vacatur of the relevant IDR determinations under Section 10. Instead, SpecialtyCare seeks a court order enforcing the IDR determinations pursuant to Section 9, and the question is whether the No Suprises Act permits such relief under Section 9 of the FAA.

The No Surprises Act provides that IDR determinations "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9." 42 U.S.C. § 300gg-111(c)(5)(E). In other words, the No Surprises Act expressly prohibits judicial review of IDR determinations except where vacatur is sought pursuant to Section 10 of the FAA. In the Court's view, Congress's decision to incorporate only Section 10 of the FAA into the No Surprises Act "indicates that Congress deliberately left out" Section 9. *See Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 470 (3d Cir. 1994). Addressing this precise issue last year, the Fifth Circuit noted the same thing – the inclusion of Section 10 but omission of Section 9 in the No Surprises Act was a meaningful difference intended to have consequence. *See Guardian Flight*,

140 F.4th at 276 ("Section 9 of the FAA empowers courts to confirm or enforce arbitration awards, but Congress chose not to incorporate § 9 into the NSA. It incorporated only parts of § 10. By contrast, in other statutes, Congress *has* incorporated § 9 to create a private right of action. *See* 5 U.S.C. § 580(c). So, Congress knew how to create a private right of action in the [No Surprises Act] – and has done so elsewhere – but declined to do so." (cleaned up)). The No Surprises Act does not contemplate enforcement of IDR determinations through Section 9 of the FAA.

The Court is unpersuaded by the authority cited by SpecialtyCare. (D.I. 19 at 4-6). As to *Guardian Flight v. Aetna Life Insurance* ("*Aetna*"), the District of Connecticut concluded that IDR determinations under the No Surprises Act could be enforced by the courts. 789 F. Supp. 3d 214, 225-29 (D. Conn. 2025). But the court did not find an enforcement mechanism through Section 9 of the FAA. *Id.* at 227 ("No judicial 'confirmation' is required for [IDR determinations] to become 'binding.' There is thus no reason for the [No Surprises Act] to reference § 9 of the FAA."). Instead, in reaching its conclusion, the *Aetna* court reasoned that, without judicial confirmation, "IDR determinations would be effectively unenforceable." *Id.* at 228. But that rationale ignores the enforcement mechanisms expressly provided by the No Surprises Act. *See, e.g.*, 42 U.S.C. § 300gg-22; *see also Mod. Orthopaedics of NJ v. Premera Blue Cross*, No. 2:25-CV-01087 (BRM) (JSA), 2025 WL 3063648, at *9-10 (D.N.J. Nov. 3, 2025); *see also Guardian Flight*, 140 F.4th at 277 (summarizing administrative remedies offered by No Surprises Act to enforce IDR determinations).[2] And as to *GPS*, SpecialtyCare ignores the actual basis for jurisdiction in that

---

2    Acknowledging the "conflict" between its decision and the Fifth Circuit's, the District of Connecticut has recently noted that "[i]t is possible I would have reached a different conclusion" had 42 U.S.C. § 300gg-22 been briefed. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 3:24-cv-00680-MPS, D.I. 295 (D. Conn. Sept. 30, 2025). Notably, no federal court has followed the District of Connecticut in finding jurisdiction to enforce IDR determinations where no party seeks vacatur.

case. (D.I. 19 at 5 & 9-11). Although the *GPS* court did enforce the IDR determination, the court "only had jurisdiction to confirm the award because the [plaintiff] attempted to vacate" the IDR determination under Section 10 of the FAA, thereby permitting "judicial review" under the No Surprises Act. *Mod. Orthopaedics*, 2025 WL 3063648, at *13 (distinguishing *GPS*); *see also SpecialtyCare Inc. v. Meritain Health, Inc.*, C.A. No. 25-198-MN, 2026 WL 353259, at *4 (D. Del. Feb. 9, 2026) (same); *T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Ass'n*, No. 25-CV-1255 (CS), 2025 WL 3496382, at *6 (S.D.N.Y. Dec. 5, 2025) (same); *Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-CV-20428, 2025 WL 742761, at *3 n.2 (S.D. Fla. Mar. 9, 2025) (same); *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1083-084 (M.D. Fla. 2023) (same). Here, neither side seeks vacatur of the IDR determinations pursuant to Section 10 of the FAA and, as such, *GPS* is inapplicable.

Ultimately, the Court agrees with the many other district courts that have concluded IDR determinations under the No Surprises Act cannot be enforced pursuant to Section 9 of the FAA.[3] The Court therefore recommends that Count I be dismissed.

---

[3]    *SpecialtyCare Inc. v. Aetna, Inc.*, No. 1:25-CV-224, 2025 WL 3719227, at *2-3 (M.D. Pa. Dec. 23, 2025); *N. Jersey Neurosurgical Assocs. PA. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-12593 (SDW) (MAH), 2025 U.S. Dist. LEXIS 261572, at *1-2 (D.N.J. Dec. 18, 2025); *Neuromon Pros. LLC v. Aetna Life Ins. Co.*, No. 25-1701 (SDW) (JSA), 2025 U.S. Dist. LEXIS 261584 (D.N.J. Dec. 18, 2025); *Savalia v. Blue Shield of Cal. Life & Health Ins. Co.*, No. 8:25-cv-02031, 2025 U.S. Dist. LEXIS 261150, at *16 (C.D. Cal. Dec. 16, 2025); *Mitchell F. Reiter MD PC v. Horizon Blue Cross Blue Shield of New Jersey*, No. 2:25-CV-12526 (WJM), 2025 WL 3514300, at *3-5 (D.N.J. Dec. 8, 2025); *T.V. Seshan*, 2025 WL 3496382, at *4-7; *Spiel, MD, PA v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-14769 (SRC), 2025 WL 3459719, at *4-6 (D.N.J. Dec. 2, 2025); *Tamagnini v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-02022 (SRC), 2025 WL 3459708, at *4-6 (D.N.J. Dec. 2, 2025); *Complete Med. Wellness LLC v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-04177 (SRC), 2025 WL 3443620, at *4-6 (D.N.J. Dec. 1, 2025); *Garden State Pain Mgmt. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-05679 (SRC), 2025 WL 3443243, at *4-6 (D.N.J. Dec. 1, 2025); *Ne. Neurosurgical Assocs. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-06288 (SRC), 2025 WL 3282210, at *4-6 (D.N.J. Nov. 25, 2025); *Freeman Pain Inst. P.A.*

B.    **Count II (Action for Non-Payment Under the No Surprises Act) and Count III (Implied Right of Action Under the No Surprises Act)**

Counts II and III seek payment of amounts due under the IDR determinations and are premised solely on violations of the No Surprises Act. (D.I. 1 ¶¶ 38-47). UMR argues that Counts II and III must be dismissed because the statute creates neither an express nor implied private right of action. (D.I. 17 at 8-13; D.I. 21 at 1-5). The Court agrees.

As an initial matter, there is no express private right of action to confirm IDR determinations under the No Surprises Act. *See Guardian Flight*, 140 F.4th at 275 ("[T]he NSA contains no express right of action to enforce or confirm an IDR award."). SpecialtyCare does not contend otherwise. (D.I. 19 at 6-14). Instead, SpecialtyCare appears to argue that the No Surprises Act creates an implied private right of action based on its provision that IDR determinations "shall be binding upon the parties involved." (*Id.* at 6-8 (quoting 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I) and relying upon *Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020))).

In determining whether a private right of action exists under a federal statute, courts in the Third Circuit evaluate "(1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff." *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) and *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004)). A plaintiff must demonstrate both elements are satisfied for a court to conclude that a federal statute creates an implied private right of action. *McGovern*, 554 F.3d at 116.

---

*v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-02507 (SRC), 2025 WL 3268289, at *4-6 (D.N.J. Nov. 24, 2025); *PHI Health, LLC v. Keating Auto Grp. Emp. Ben. Plan Tr.*, No. 4:24-cv-2832, 2025 WL 3618198, at *3-4 (S.D. Tex. Nov. 4, 2025), *report and recommendation adopted sub nom. PHI Health, LLC v. Entrust, LLC*, No. CV H-24-2832, 2025 WL 3617339 (S.D. Tex. Dec. 11, 2025); *Mod. Orthopaedics*, 2025 WL 3063648, at *5-7; *Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, 790 F. Supp. 3d 129, 136-38 (E.D.N.Y. 2025).

As to the first prong, the Court concludes that the "shall be binding" and "shall be made" language of the No Surprises Act creates a personal right for SpecialtyCare.  *See Mod. Orthopaedics*, 2025 WL 3063648, at *8-9 ("There is no plausible argument that Congress intended to allow insurers like [defendant] to simply ignore the 'binding' outcomes of the IDR.  [Plaintiff] has a right to be paid.  The question is whether the Court may properly enforce this right." (citation omitted)).

As to the second prong, however, the "robust system of administrative enforcement" provided by the No Surprises Act creates a "strong presumption" that Congress did not intend to create a personal remedy for SpecialtyCare.  *See id.* at *9; *see also Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 (3d Cir. 2007).  Indeed, Congress empowered the Department of Health and Human Services ("HHS") – not the courts – to "assess penalties against insurers for failure to comply" with the statute.  *Guardian Flight*, 140 F.4th at 277 (discussing 42 U.S.C. § 300gg-22(b)(2)(A)); *see also Mod. Orthopaedics*, 2025 WL 3063648, at *9-10 ("[T]he primary enforcement authority for the [No Surprises Act] lies with *state* administrative agencies. . . . However, in the event a State is unable, or unwilling, to enforce compliance with any part of the [No Surprises Act], the HHS may assume primary responsibility for enforcing the [No Surprises Act].").  That the No Surprises Act provides for state and HHS enforcement – while expressly prohibiting judicial review beyond petitions to vacate IDR determinations – demonstrates that SpecialtyCare has no personal remedy under the statute.  *See Guardian Flight*, 140 F.4th at 276 ("We will not find an implied right of action where Congress expressly forecloses it.").

Although the Third Circuit has not ruled on this particular issue, the Fifth Circuit has in the recent *Guardian Flight* decision.  There, the plaintiff healthcare providers sued the defendant insurer for failure to timely pay IDR determination awards pursuant to the No Surprises Act,

9

**A-032**

similarly asserting claims under the statute (and ERISA). *See Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp. 3d 742, 748 (N.D. Tex. 2024). The district court dismissed all of plaintiffs' claims. *Id.* at 755. On appeal, the Fifth Circuit affirmed the dismissal, finding that the No Surprises Act does not provide an express or implied private right of action to confirm IDR determinations. *Guardian Flight*, 140 F.4th at 274-77.[4] This Court ultimately finds persuasive and agrees with the Fifth Circuit and the vast majority of district courts that the No Surprises Act does not permit judicial enforcement of IDR determinations.[5]

The Court is not persuaded by the cases SpecialtyCare relies on. (D.I. 19 at 8-11). As discussed above in Section III.A, *GPS* involved a (permissible) petition to vacate an IDR determination under Section 10 of the FAA, whereas *Aetna* ignored the available non-judicial enforcement mechanisms under the No Surprises Act. Although *Aetna* found that judicial enforcement of IDR determinations was permitted by the No Surprises Act, *Aetna* apparently "stands alone." *Meritain Health*, 2026 WL 353259, at *4; *see also Guardian Flight*, 140 F.4th at 276 n.5 (Fifth Circuit disagreeing with *Aetna* based on the "plain text and structure" of the No Surprises Act). In *Maine Community Health Options v. United States*, 590 U.S. 296 (2020), the

---

[4]   The Supreme Court recently denied certiorari. *See* No. 25-441, 2026 WL 79855 (U.S. Jan. 12, 2026).

[5]   *See Guardian Flight*, 140 F.4th at 274-77; *Meritain Health*, 2026 WL 353259, at *3-4; *SpecialtyCare*, 2025 WL 3719227, at *2-3; *N. Jersey Neurosurgical Assocs.*, 2025 U.S. Dist. LEXIS 261572, at *1-2; *Neuromon*, 2025 U.S. Dist. LEXIS 261584; *Savalia*, 2025 U.S. Dist. LEXIS 261150, at *16; *Worldwide Aircraft Servs. Inc. v. Freedom Life Ins. Co. of Am.*, No. 8:25-cv-01158-WFJ-AEP, 2025 WL 3551397, at *2-3 (M.D. Fla. Dec. 11, 2025); *Reiter*, 2025 WL 3514300, at *3-5; *T.V. Seshan*, 2025 WL 3496382, at *7-9; *Spiel*, 2025 WL 3459719, at *6-8; *Tamagnini*, 2025 WL 3459708, at *6-7; *Complete Med. Wellness*, 2025 WL 3443620, at *6-8; *Garden State Pain Mgmt.*, 2025 WL 3443243, at *6-8; *Worldwide Aircraft*, 2025 WL 3312169, at *1-2; *Ne. Neurosurgical Assocs.*, 2025 WL 3282210, at *6-8; *Freeman*, 2025 WL 3268289, at *6-8; *PHI Health*, 2025 WL 3618198, at *2-3; *Mod. Orthopaedics*, 2025 WL 3063648, at *7-14; *Farkas*, 790 F. Supp. 3d at 136-38.

statute at issue (Risk Corridors program of the Affordable Care Act) did not provide a similar enforcement mechanism for a plaintiff or include the same prohibition of judicial review as the No Surprises Act. *Id.* at 309-11. And in *Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68 (D.D.C. 2002), the court applied (without analyzing) already existing arbitration law to find arbitration awards under the Federal Insecticide Fungicide and Rodenticide Act judicially enforceable. *See id.* at 73-77; *see also Worldwide Aircraft Servs., Inc. v. United Healthcare*, No. 8:24-CV-2527-TPB-LSG, 2025 WL 3312169, at *2 (M.D. Fla. Nov. 28, 2025) (distinguishing *Cheminova*); *Med-Trans Corp.*, 700 F. Supp. 3d at 1084 (same). These cases are either not on point or contrary to the many others that have found no private right of action exists under the No Suprises Act.

The overwhelming weight of authority to address this issue has concluded that out-of-network providers cannot turn to the courts to enforce IDR determinations rendered under the No Surprises Act. Even if SpecialtyCare would prefer a different mechanism, "the wisdom of Congress's policy choice is beyond our judicial ken." *Guardian Flight*, 140 F.4th at 277. Because the No Surprises Act does not create an express or implied private right of action to enforce IDR determinations, the Court recommends that Counts II and III be dismissed.

## C.    Count IV (Improper Denial of Benefits Under ERISA)

In Count IV, SpecialtyCare alleges that it has been assigned the right to benefits (and payments) by UMR's members and insureds and, as such, the amounts due under the IDR determinations are owed to SpecialtyCare as an ERISA beneficiary. (D.I. 1 ¶¶ 48-56). UMR argues that SpecialtyCare's ERISA claim should be dismissed for lack of Article III standing because the plan beneficiaries who assigned their claims to SpecialtyCare (*id*. ¶ 14) did not suffer any concrete injury. (D.I. 17 at 13-15; D.I. 21 at 6-7). Relying on *Aetna*, SpecialtyCare argues that untimely payment of IDR determinations constitutes a legally cognizable "concrete injury."

11

**A-034**

(D.I. 19 at 14-16 (quoting *Aetna*, 789 F. Supp. 3d at 231-32)).  The Court ultimately agrees with UMR that SpecialtyCare lacks standing to sue under ERISA for failure to pay the amounts due under the IDR determinations.

Healthcare providers "may obtain standing to sue" under ERISA "by assignment from a plan participant."  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).  But the plan participants must have suffered a concrete injury for the provider to have standing as assignee.  *See Guardian Flight*, 140 F.4th at 278; *see also Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor."); *CardioNet*, 751 F.3d at 178 ("It is a basic principle of assignment law that an assignee's rights derive from the assignor.").  By design, the No Surprises Act shields plan participants from the out-of-network costs that are the subject of this lawsuit; in other words, the outcome of this dispute will not affect the plan participants in any way.  *See Mod. Orthopaedics*, 2025 WL 3063648, at *8-9 ("The [No Surprises Act] protects patients by relieving them of liability to pay for the procedure beyond their ordinary in-network insurance payments and instead has the provider and the insurer negotiate or dispute the proper payment among themselves.").  The plan participants have no real interest in the outcome of this case.

Because the plan participants lack a "concrete stake in this lawsuit," even as a purported assignee, SpecialtyCare similarly lacks the Article III standing necessary to bring an ERISA claim. *See Guardian Flight*, 140 F.4th at 278 ("[B]ecause the beneficiaries would lack Article III standing if they brought an ERISA claim on their own, Providers lack standing to bring a derivative ERISA claim as their assignees."); *see also Thole v. U. S. Bank N.A*, 590 U.S. 538, 541 (2020) ("If Thole and Smith were to *lose* this lawsuit, they would still receive the exact same monthly benefits that

12

**A-035**

they are already slated to receive, not a penny less.  If Thole and Smith were to **win** this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more. . . . Because the plaintiffs themselves have no concrete stake in the lawsuit, they lack Article III standing.").  None of the cases cited by SpecialtyCare compel a different result. (*See* D.I. 19 at 14-16).  Even if SpecialtyCare had plausibly alleged that it received assignment of member benefits, such an assignment would not confer Article III standing to sue an insurer for failure to pay amounts due under the IDR determinations.  *See Guardian Flight*, 140 F.4th at 278. The Court therefore recommends that the ERISA claim (Count IV) be dismissed.

> **D.    Count V (Open Account), Count VI (Bad Faith) and Count VII (Unjust Enrichment)**

In Counts V, VI and VII, SpecialtyCare asserts several causes of action arising under Delaware law.  (D.I. 1 ¶¶ 57-77).  Because SpecialtyCare and UMR are both Delaware corporations (*id.* ¶¶ 8-9), jurisdiction over the state law claims cannot be based on diversity jurisdiction.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."); *see also* 28 U.S.C. §§ 1332(a)(1) & 1332(c)(1).  Recognizing this, SpecialtyCare alleges that this Court has jurisdiction over the state law claims based on supplemental jurisdiction under 28 U.S.C. § 1367(a).  (D.I. 1 ¶ 10).

Supplemental jurisdiction permits federal courts to adjudicate claims that would otherwise lack federal subject matter jurisdiction.  Specifically, a district court having original jurisdiction in a civil action may exercise such supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367(a).  A district court may decline to exercise supplemental jurisdiction over claims for several reasons, including where "the district court has

13

**A-036**

dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see also Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999).

As set forth above, the Court recommends dismissal of all of SpecialtyCare's federal claims. In such a situation, the exercise of supplemental jurisdiction is not automatic; instead, the Court has discretion to decide whether to exercise such jurisdiction over the state law claims. SpecialtyCare has not raised – and the Court has not identified – any considerations of judicial economy, convenience or fairness to the parties that would justify such exercise. *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). This case is in its infancy; without the federal claims, the state law claims should be dismissed. *See Humana, Inc. v. St. Jude Med., LLC*, C.A. No. 20-1032-SB, 2020 WL 7264161, at *4 (D. Del. Oct. 12, 2020) (Bibas, J., sitting by designation) (after dismissing federal claims, declining to exercise supplemental jurisdiction "[b]ecause this case has just begun [and] there is no good reason to keep the state claims in federal court"). The Court thus recommends that Counts V-VII be dismissed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court recommends that UMR's motion to dismiss (D.I. 16) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2).

**A-037**

A-038

Any responses to the objections shall be limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: February 20, 2026

_____
UNITED STATES MAGISTRATE JUDGE

15

Case: 26-1768    Document: 20-1    Page: 117    Date Filed: 06/15/2026